IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

FILED

NOV 15

Clerk, u.s. District Court for the
Courts for the District of ...

| | |
|---|---|
| THE STATE OF NEW HAMPSHIRE,<br>107 N. Main St.<br>Concord, NH  03301 | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| ERIC HOLDER,<br>Attorney General of the<br>United States of America;<br>THOMAS E. PEREZ,<br>Assistant Attorney General,<br>Civil Rights Division, United States<br>Department of Justice, Washington, DC, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>)<br>) |

Case: 1:12-cv-01854
Assigned To : Sullivan, Emmet G.
Assign. Date : 11/15/2012
Description: 3-Judge Court

Three-Judge Court Requested

## COMPLAINT

The State of New Hampshire alleges that:

1.     This is an action brought for declaratory relief pursuant to Section 4 of the

Voting Rights Act of 1965, as amended, 42 U.S.C. §1973b (hereinafter "Section 4").

This Court has jurisdiction over this action pursuant to 28 U.S.C. §1343(a)(4), 28 U.S.C.

§2201, 42 U.S.C. §1973b, and 42 U.S.C. §1973l(b).

2.     Plaintiff New Hampshire ("the State") brings this action on behalf of itself

and on behalf of the ten Towns within the State that are "covered jurisdictions," subject

to the special provisions of the Voting Rights Act, including Section 5 of the Act, 42

U.S.C. § 1973c.  42 U.S.C. § 1973b(a)(1); 28 C.F.R. § 51.2.  The ten covered Towns are

(collectively, "the Towns"):  Rindge, in Cheshire County; Millsfield, Pinkhams Grant,

Stewartstown, and Stratford, in Coos County; Benton, in Grafton County; Antrim, in

Hillsborough County; Boscawen, in Merrimack County; Newington, in Rockingham County; and Unity, in Sullivan County. *See* 39 Fed. Reg. 16912.  The State and the Towns are required to obtain preclearance from either this Court or from the Attorney General for any change in voting standards, practices and procedures since the Act's May 10, 1974, coverage date for the New Hampshire Towns. *See* 39 Fed. Reg. 16912.

3.      The Rindge Board of Selectmen is the governing body that formulates policies for the administration of government in the Town of Rindge.  The Board is comprised of three members, each elected at large for a term of three years. *See* N.H. Rev. Stat. Ann. §41:8.  The Town of Rindge is an elected governmental unit within the meaning of 42 U.S.C. § 1973b(a)(1).  Rindge holds annual Town Meetings pursuant to N.H. Rev. Stat. Ann. §40:13, sometimes referred to as the "SB2" process, which divides deliberation and voting into two separate sessions.  Rindge is also part of School Administrative Unit Number 47, *see* N.H. Rev. Stat. Ann. §194-C:1-12, which is an elected governmental unit within the meaning of 42 U.S.C. § 1973b(a)(1).

4.      According to the 2010 Census, the Town of Rindge has a total population of 6,014, of which 5,699 (94.8%) are Non-Hispanic White; 73 (1.2%) are Non-Hispanic Black; 77 (1.3%) are Hispanic; 54 (0.9%) are Non-Hispanic Asian; and 8 (0.1%) are Non-Hispanic American Indian.  The Town's voting age population is 4,812, of which 4,560 (94.8%) are Non-Hispanic White; 65 (1.4%) are Non-Hispanic Black; 69 (1.4%) are Hispanic; 46 (1%) are Non-Hispanic Asian; and 8 (0.2%) are Non-Hispanic American Indian.

5.      Millsfield Township is an unincorporated place, *see* N.H. Rev. Stat. Ann. §53:1-7.  Millsfield has a three-member Board of Selectmen, elected at large.  Millsfield is

also part of School Administrative Unit Number 98, *see* N.H. Rev. Stat. Ann. §194-C:1-12, which is an elected governmental unit within the meaning of 42 U.S.C. § 1973b(a)(1).

6. According to the 2010 Census, Millsfield Township has a total population of 23, of which 23 (100%) are Non-Hispanic White. The Township has a voting age population of 17, of which 17 (100%) are Non-Hispanic White.

7. Pinkhams Grant is an unincorporated place, *see* N.H. Rev. Stat. Ann. §53:1-7, which is governed entirely by Coos County. Pinkhams Grant does not have its own elected governing body. Pinkhams Grant is also part of School Administrative Unit Number 98, *see* N.H. Rev. Stat. Ann. §194-C:1-12, which is an elected governmental unit within the meaning of 42 U.S.C. § 1973b(a)(1).

8. According to the 2010 Census, Pinkhams Grant has a total population of 9, of which 6 (66.7%) are Non-Hispanic White and 3 (33.3%) are Non-Hispanic Asian. The entire population of Pinkhams Grant is of voting age.

9. The Stewartstown Board of Selectmen is the governing body that formulates policies for the administration of government in Stewartstown. The Town of Stewartstown is an elected governmental unit within the meaning of 42 U.S.C. § 1973b(a)(1). The Stewartstown Board of Selectmen is comprised of three members, each elected at large for a term of three years. *See* N.H. Rev. Stat. Ann. §41:8. Stewartstown holds annual Town Meetings pursuant to N.H. Rev. Stat. Ann. §39:1 *et seq*. Stewartstown is also part of School Administrative Unit Number 7, *see* N.H. Rev. Stat. Ann. §194-C:1-12, which is an elected governmental unit within the meaning of 42 U.S.C. § 1973b(a)(1).

10. According to the 2010 Census, Stewartstown has a total population of 1,004, of which 982 (97.8%) are Non-Hispanic White; 1 is Non-Hispanic Black (0.1%);

11 are Hispanic (1.1%); and 3 (0.3%) are Non-Hispanic American Indian.  The Town has

a voting age population of 802, of which 792 are Non-Hispanic White (98.8%); 1 (0.1%)

is Non-Hispanic Black; 3 (0.4%) are Hispanic; and 3 (0.4%) are Non-Hispanic American

Indian.

      11.     The Stratford Board of Selectmen is the governing body that formulates

policies for the administration of government in Stratford.  The Town of Stratford is an

elected governmental unit within the meaning of 42 U.S.C. § 1973b(a)(1).  The Board is

comprised of three members, each elected at large for a term of three years.  *See* N.H. Rev.

Stat. Ann. §41:8.  Stratford holds annual Town Meetings pursuant to N.H. Rev. Stat. Ann.

§39:1 *et seq*.  Stratford is also part of School Administrative Unit Number 58, *see* N.H.

Rev. Stat. Ann. §194-C:1-12, which is an elected governmental unit within the meaning of

42 U.S.C. § 1973b(a)(1).

      12.     According to the 2010 Census, Stratford has a total population of 746, of

which 710 (95.2%) are Non-Hispanic White; 3 (0.4%) are Non-Hispanic Black; 10 (1.3%)

are Hispanic; 7 (0.9%) are Non-Hispanic Asian; and 4 (0.5%) are Non-Hispanic American

Indian.  The Town has a voting age population of 607, of which 578 (95.2%) are Non-

Hispanic White; 3 (0.5%) are Non-Hispanic Black; 6 (1%) are Hispanic; 5 (0.8%) are

Non-Hispanic Asian; and 4 (0.7%) are Non-Hispanic American Indian.

      13.     The Benton Board of Selectmen is the governing body that formulates

policies for the administration of government in Benton.  The Town of Benton is an

elected governmental unit within the meaning of 42 U.S.C. § 1973b(a)(1).  The Board is

comprised of three members, each elected at large for a term of three years.  *See* N.H. Rev.

Stat. Ann. §41:8.  Benton holds annual Town Meetings pursuant to N.H. Rev. Stat. Ann.

§39:1 *et seq*.  Benton is also part of School Administrative Unit Number 25, *see* N.H. Rev. Stat. Ann. §194-C:1-12, which is an elected governmental unit within the meaning of 42 U.S.C. § 1973b(a)(1).

14.     According to the 2010 Census, Benton has a total population of 364, of which 350 (96.2%) are Non-Hispanic White; 4 (1.1%) are Hispanic; 2 (0.5%) are Non-Hispanic Asian; and 8 (2.2%) are Non-Hispanic and identify as two or more races.  The Town has a voting age population of 314, of which 301 (95.9%) are Non-Hispanic White; 4 (1.1%) are Hispanic; 1 (0.3%) is Non-Hispanic Asian; and 8 (2.5%) are Non-Hispanic and identify as two or more races.

15.     The Antrim Board of Selectmen is the governing body that formulates policies for the administration of government for the Town of Antrim.  The Town of Antrim is an elected governmental unit within the meaning of 42 U.S.C. § 1973b(a)(1). The Board is comprised of three members, each elected at large for a term of three years. *See* N.H. Rev. Stat. Ann. §41:8.  Antrim holds annual Town Meetings pursuant to N.H. Rev. Stat. Ann. §39:1 *et seq*.  Antrim is also part of School Administrative Unit Number 1, *see* N.H. Rev. Stat. Ann. §194-C:1-12, which is an elected governmental unit within the meaning of 42 U.S.C. § 1973b(a)(1).

16.     According to the 2010 Census, Antrim has a total population of 2,637, of which 2,540 (96.3%) are Non-Hispanic White; 7 (0.3%) are Non-Hispanic Black; 31 (1.2%) are Hispanic; 10 (0.4%) are Non-Hispanic Asian; 5 are Non-Hispanic American Indian; and 40 (1.5%) are Non-Hispanic and identify as two or more races.  The Town has a voting age population of 2,038, of which 1,978 (97.1%) are Non-Hispanic White; 5 (0.2%) are Non-Hispanic Black; 17 (0.8%) are Hispanic; 7 (0.3%) are Non-Hispanic

Asian; 3 (0.1%) are Non-Hispanic American Indian; and 27 (1.3%) are Non-Hispanic and identify as two or more races.

17.     The Boscawen Board of Selectmen is the governing body that formulates policies for the administration of government in the Town of Boscawen.  The Town of Boscawen is an elected governmental unit within the meaning of 42 U.S.C. § 1973b(a)(1). The Board is comprised of three members, each elected at large for a term of three years. *See* N.H. Rev. Stat. Ann. §41:8.  Boscawen holds annual Town Meetings pursuant to N.H. Rev. Stat. Ann. §39:1 *et seq*.  Boscawen is also part of School Administrative Unit Number 46, *see* N.H. Rev. Stat. Ann. §194-C:1-12, which is an elected governmental unit within the meaning of 42 U.S.C. § 1973b(a)(1).

18.     According to the 2010 Census, Boscawen has a total population of 3,965, of which 3,835 (96.7%) are Non-Hispanic White; 24 (0.6%) are Non-Hispanic Black; 38 (1%) are Hispanic; 11 (0.3%) are Non-Hispanic Asian; 10 (0.3%) are Non-Hispanic American Indian; and 44 (1.1%) are Non-Hispanic and identify as two or more races.  The Town has a voting age population of 3,191, of which 3,100 (97.1%) are Non-Hispanic White; 21 (0.7%) are Non-Hispanic Black; 28 (0.9%) are Hispanic; 10 (0.3%) are Non-Hispanic Asian; 5 (0.2%) are Non-Hispanic American Indian; and 24 (0.8%) are Non-Hispanic and identify as two or more races.

19.     The Newington Board of Selectmen is the governing body that formulates policies for the administration of government in the Town of Newington.  The Town of Newington is an elected governmental unit within the meaning of 42 U.S.C. § 1973b(a)(1).  The Board is comprised of three members, each elected at large for a term of three years. *See* N.H. Rev. Stat. Ann. §41:8.  Newington holds annual Town Meetings

pursuant to N.H. Rev. Stat. Ann. §39:1 *et seq.* Newington is also part of School Administrative Unit Number 50, *see* N.H. Rev. Stat. Ann. §194-C:1-12, which is an elected governmental unit within the meaning of 42 U.S.C. § 1973b(a)(1).

20.     According to the 2010 Census, Newington has a total population of 753, of which 724 (96.1%) are Non-Hispanic White; 1 (0.1%) is Non-Hispanic Black; 8 (1.1%) are Hispanic; 10 (1.3%) are Non-Hispanic Asian; and 1 (0.1%) is Non-Hispanic American Indian. The Town has a voting age population of 623, of which 604 (97%) are Non-Hispanic White; 1 (0.2%) is Non-Hispanic Black; 5 (0.8%) are Hispanic; 8 (1.3%) are Non-Hispanic Asian; and 1 (0.2%) is Non-Hispanic American Indian.

21.     The Unity Board of Selectmen is the governing body that formulates policies for the administration of government in the Town of Unity. The Town of Unity is an elected governmental unit within the meaning of 42 U.S.C. § 1973b(a)(1). The Board is comprised of three members, each elected at large for a term of three years. *See* N.H. Rev. Stat. Ann. §41:8. Unity holds annual Town Meetings pursuant to N.H. Rev. Stat. Ann. §39:1 *et seq.* Unity is also part of School Administrative Unit Number 6, *see* N.H. Rev. Stat. Ann. §194-C:1-12, which is an elected governmental unit within the meaning of 42 U.S.C. § 1973b(a)(1).

22.     According to the 2010 Census, Unity has a total population of 1,671, of which 1,618 (96.8%) are Non-Hispanic White; 5 (0.3%) are Non-Hispanic Black; 14 (0.8%) are Hispanic; 5 (0.3%) are Non-Hispanic Asian; 3 (0.2%) are Non-Hispanic American Indian; and 26 (1.6%) are Non-Hispanic and identify as two or more races. The Town has a voting age population of 1,421, of which 1,386 (97.5%) are Non-Hispanic White; 5 (0.4%) are Non-Hispanic Black; 5 (0.4%) are Hispanic; 5 (0.4%) are Non-

Hispanic Asian; 3 (0.2%) are Non-Hispanic American Indian; and 17 (1.2%) are Non-Hispanic and identify as two or more races.

23.      Neither the State nor any of the Towns maintain voter registration data by race.  Current data show that a significant portion of the State's voting age population is registered to vote.  As of November 2, 2010, the State had 945,341 registered voters, or 91.8% of the State's 2010 Census voting age population (VAP).

24.      Voter turnout in elections within the State (*i.e.* the percentage of those registered voters who cast ballots) varies according to the offices up for election.  In the presidential election years of 2000 and 2004, voter turnout (the percentage of the registered voters who actually cast ballots) increased from 67.7% in 2000 to 79.8% in 2004.  The percentage turnout dropped slightly from 2004 to 75 % in 2008, but the number of ballots cast increased from 683,672 in 2004 to 719,403 in 2008.  Turnout for the last three non-presidential federal elections has fluctuated: 65.6% in 2002, 49% in 2006, and 48.8% in 2010.

25.      The plaintiff State and the Towns are subject to certain special remedial provisions of the Voting Rights Act, including the provisions of Section 5 of the Act, 42 U.S.C. §1973c.  Under Section 5 of the Act, known as the "preclearance" provisions, covered jurisdictions, including the Towns, are required to seek and obtain preclearance from either this Court or from the United States Attorney General of any change affecting voting, and such preclearance must be obtained prior to implementation.

26.      Since its inception in 1965, the Voting Rights Act has allowed States that are subject to these special provisions of the Act to exempt themselves from coverage under the Act's special remedial provisions, if they can satisfy standards established in

the Voting Rights Act.  This exemption process is known as "bailout".

27.     In 1982, Congress made changes in the exemption standards of the Act.

As amended in 1982, Section 4 of the Voting Rights Act provides that States, as well as

political subdivisions within those States that are covered under the special provisions of

the Act, are entitled to a declaratory judgment in this Court granting an exemption from

the Act's special remedial provisions if, during the ten years preceding the filing of the

action:

> A) no test or device has been used either for the purpose or with the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group, within the State or political subdivision seeking a declaratory judgment;
> B) no final judgment has been entered by any court determining that the political subdivision has denied or abridged the right to vote on account of race, color, or membership in a language minority group;
> C)  no Federal examiners have been assigned to the political subdivision;
> D)  all governmental units within the  political subdivision have complied with the preclearance provisions of Section 5 of the Voting Rights Act, 42 U.S.C. 1973c; and
> E) the Attorney General has not interposed any objection to any proposed voting change within the political subdivision and no declaratory judgment has been denied with regard to such a change by this Court under Section 5.

28.     As amended in 1982, Section 4 of the Act also requires States and political

subdivisions seeking an exemption from the Act's special provisions to show that, during

the pendency of the declaratory judgment action seeking such exemption:

> A) Any voting procedure or method of election within the state or political subdivision exists which inhibits or dilutes equal access to the electoral process has been eliminated;
> B) Constructive efforts have been made by the political subdivision to eliminate any intimidation or harassment of persons exercising rights under the Voting Rights Act; and
> C) Expanded opportunities for convenient registration and voting exist within the State or political subdivision.

29.     As described in each of the paragraphs set forth below, the State and the

covered Towns have fully complied with the provisions of Section 4 of the Act as set forth in paragraphs 27 and 28, *supra*.

30.     The State of New Hampshire, the Towns, and the covered School Administrative Units have made numerous submissions to the Attorney General over the years seeking preclearance of voting changes pursuant to Section 5 of the Voting Rights Act.  No submission by the State or the covered Towns has ever received an objection from the Attorney General.

31.     The most recent preclearance submissions were made after the Attorney General reviewed the elections records of the Towns and School Administrative Units in the course of considering the State's bailout request and determined that these matters were not reflected in their previous submissions to the Attorney General over the preceding ten years.  The failure to make such submissions prior to implementation was inadvertent and not the product of any discriminatory purpose or an intent to evade the Act.  Upon notice from the Attorney General, these matters promptly were submitted for review under Section 5.

32.     During the ten years preceding the filing of this action, no person in the State has been denied the right to vote on account of race, color, or membership in a language group.

33.     During the ten years preceding the filing of this action, no "test or device" as defined in the Voting Rights Act (42 U.S.C.  §1973b(c)) has been used in the State as a prerequisite to either registering or voting.

34.     During the ten years preceding the filing of this action, and during the pendency of this action, no final judgment of any court of the United States has

determined that denials or abridgements of the right to vote on account of race or color have occurred anywhere in the territory of the State.  Further, no consent decree, settlement, or agreement has been entered into resulting in any abandonment of a voting practice challenged on such grounds.  No action is presently pending alleging such denials or abridgements of the right to vote.  42 U.S.C. § 1973b(a)(1)(B).

35.     During the ten years preceding the filing of this action, and during the pendency of this action, there has been no need for the State, or any Town or School Administrative Unit, to repeal any voting changes to which the Attorney General has objected, or to which this Court has denied a declaratory judgment, since no such objections or denials have occurred.  42 U.S.C. § 1973b(a)(1)(D).

36.     During the ten years preceding the filing of this action, and during the pendency of this action, the Attorney General has not interposed any objection to voting changes submitted by or on behalf of the State, Towns, or School Administrative Units for administrative review under Section 5 of the Voting Rights Act; nor has any declaratory judgment been denied by this Court to any voting changes by or on behalf of the State, Towns, or School Administrative Units.  42 U.S.C. § 1973b(a)(1)(E).

37.     Neither the State, the Towns, nor the School Administrative Units have employed any voting procedures or methods of election that inhibit or dilute equal access to the electoral process by minority voters.  Minority voters in the State are not being denied an equal opportunity to elect candidates of their choice.

38.     Federal examiners have never been appointed or assigned to the State under Section 3 of the Voting Rights Act, 42 U.S.C. §1973a.

39.     There are no known incidents in the State where any person exercising his

or her right to vote has been intimidated or harassed at the polls (or while attempting to register to vote).

40.     The allegations set forth in paragraphs 30 through 39, above, if established, entitle the State of New Hampshire and its covered political subdivisions to a declaratory judgment under Section 4 of the Voting Rights Act, 42 U.S.C. §1973b, exempting the State and all covered governmental units within the State from the special remedial provisions of the Voting Rights Act.

41.     Pursuant to 42 U.S.C. §1973b, the State and all of the Towns have "publicize[d] the intended commencement …of [this] action in the media serving [the County] and in the appropriate United States post offices."  The Towns publicized the intended commencement of this action by posting notice of the bailout action at Town post offices and Town Hall buildings.  Those towns that have websites posted the Notice on their website, as did the NH Secretary of State.  The State also published Notice of the Bailout on two separate occasions in a newspaper of general circulation.

WHEREFORE, plaintiff State of New Hampshire respectfully prays that this Court:

A. Convene a three-judge court, pursuant to 28 U.S.C. §2284 and 42 U.S.C. §1973b, to hear the claims raised in plaintiff's complaint;

B. Enter a declaratory judgment that the State and its ten covered Towns (Rindge, in Cheshire County; Millsfield, Pinkhams Grant, Stewartstown, and Stratford, in Coos County; Benton, in Grafton County; Antrim, in Hillsborough County; Boscawen, in Merrimack County; Newington, in Rockingham County; and Unity, in Sullivan County) are entitled to a bailout from the special remedial provisions of the Voting Rights Act;

12

and

      C.  Grant such other relief as may be necessary and proper as the needs of justice

may require.


                                      **For the Plaintiff**
                                      **STATE OF NEW HAMPSHIRE:**

                                      **MICHAEL A. DELANEY**
                                      Attorney General
                                      **MATTHEW MAVROGEORGE**
                                      Assistant Attorney General
                                      33 Capitol Street
                                      Concord, NH  03301
                                      Phone: (603) 271-3658
                                      Fax: (603) 271-2110

                                      **J. GERALD HEBERT**
                                      D.C. Bar No. 447676
                                      Attorney at Law
                                      191 Somervelle Street, #405
                                      Alexandria, Va. 22304
                                      Tel (703) 628-4673
                                      Email: hebert@voterlaw.com