UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE STATE OF NEW HAMPSHIRE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ERIC HOLDER, *et ano.* )<br>)<br>Defendants, )<br>)<br>and )<br>)<br>PETER HEILEMANN, )<br>)<br>Proposed Intervenor-Defendant. )<br>) | Civil Action No. 12-01854 (EGS) |

**MOTION TO INTERVENE**

Peter Heilemann hereby moves, pursuant to Fed. R. Civ. P. 24 and Local Civil Rule 7(j), to intervene in this action.

Pursuant to Local Rule 7(m), movant has consulted with counsel for plaintiff to ascertain plaintiff's position on this motion. Plaintiff opposes the relief sought by this motion. Defendant has not yet appeared. Pursuant to Local Rule 7(j) a proposed motion to dismiss accompanies this motion.

Movant relies on the accompanying memorandum of points and authorities to support this motion.

Respectfully submitted,

*/s/ Michael E. Rosman*
Michael E. Rosman (DC Bar No. 454002)
Michelle Scott (DC Bar No. 489097)
Center for Individual Rights
1233 20th St. NW Suite 300
Washington, DC 20036
(202) 833-8400

Attorneys for Movant

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE STATE OF NEW HAMPSHIRE, ) | |
| Plaintiff, ) | Civil Action No. 12-01854 (EGS) |
| v. ) | |
| ERIC HOLDER, *et ano.* ) | |
| Defendants, ) | |
| and ) | |
| PETER HEILEMANN, ) | |
| Proposed Intervenor-Defendant. ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO INTERVENE**

Peter Heilemann submits this memorandum of points and authorities in support of his motion, pursuant to Rule 24 of the Federal Rules of Civil Procedure and Local Civil Rule 7(j), to intervene in this action.

This action is by New Hampshire, for itself and on behalf of ten towns (the "Covered Towns") that are covered jurisdictions under Sections 4 and 5 of the Voting Rights Act (42 U.S.C. § 1973c), to "bail out" of that coverage.  Specifically, the complaint in this action seeks "a declaratory judgment that the State and its ten covered Towns . . . are entitled to a bailout from the special remedial provisions of the Voting Rights Act."  Complaint at 12 (*ad damnum*, ¶ B).  But, in fact, plaintiff is not entitled to bail out of the remedial provisions because it repeatedly has violated the Voting Rights Act by implementing changes in voting without having those changes precleared.  Complaint ¶ 31.

Movant is a voter in New Hampshire who receives the benefit of the special remedial provisions of the Voting Rights Act because every statewide law effecting any change in voting in any of the Covered Towns must be "precleared" under Section 5 by either the Attorney General of the United States or this Court.  Such statewide laws can be precleared if and only if the Attorney General, or this Court, determines that the state has met its burden of showing that the laws do not have the purpose or effect of denying or abridging the right to vote on the basis of race or color.  Movant wants to continue to receive the benefit of such review and, accordingly, has an interest in ensuring that New Hampshire's statewide election laws continue to be subjected to that review.

I. MOVANT MEETS THE REQUIREMENTS FOR INTERVENTION
AS OF RIGHT UNDER RULE 24(a)(1)

Rule 24(a)(1) of the Federal Rules of Civil Procedure provides that, on timely motion, the court "must permit anyone to intervene" who "is given an unconditional right to intervene by a federal statute."  This motion is made just a few weeks after the complaint was filed, and prior to any responsive pleading.  Movant will participate in this case on the same schedule as the current parties.  Accordingly, this motion is timely.

Section 4(a)(4) of the Voting Rights Act, 42 U.S.C. § 1973b(a)(4), part of the statute that governs actions of this kind, states that "[a]ny aggrieved party may as of right intervene at any stage in such action."  (Similarly, Section 4(a)(9) states that any aggrieved party may intervene as of right at any stage of an action where the Attorney General has consented to a declaratory judgment permitting bailout.  That statute provides that the Attorney General may do so "if

2

based upon a showing of objective and compelling evidence by the plaintiff, and upon investigation, he is satisfied that the State or political subdivision has complied with the requirements of subsection (a)(1) of this section." 42 U.S.C. § 1973b(a)(9).)

Although "aggrieved party" is not defined in the statute, the word "aggrieved" is generally interpreted broadly, and should be understood to provide a liberal standard for identifying potential intervenors. *Cf. Federal Election Comm'n v. Akins*, 526 U.S. 11, 19 (1998) ("History associates the word 'aggrieved' with a congressional intent to cast the standing net broadly – beyond the common-law interests and substantive rights upon which 'prudential' standing traditionally rested."); *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209 (1972) (holding that white tenants claiming injury by landlord's discrimination against minorities in that they were deprived of the benefits of interracial association had standing to sue under the Fair Housing Act; "[t]he definition of 'person aggrieved' contained in [the Fair Housing Act] is . . . broad"); S. Rep. No. 295, 94th Cong., 1st Sess., 1975, reprinted in 1975 U.S.C.C.A.N. 774, 806 (Noting that the phrase "aggrieved party" in Section 3 of the Voting Rights Act is similar to "aggrieved person" in other parts of the U.S. Code, and citing, *inter alia*, *Trafficante*). Here, movant would be deprived of the protection of the remedial provisions of the Voting Rights Act were plaintiff successful in obtaining the relief it seeks in this lawsuit. That suffices to constitute an imminent Article III injury, and, *a fortiori*, constitutes sufficient harm to qualify as an aggrieved party for purposes of intervention under the statute.

This Court has permitted intervention in cases by voters involving a request for a bailout even when the Attorney General opposed bailout. *Northwest Austin Municipal Utility Dist. v.*

*Gonzales*, D.D.C. Civ No. 06-01384-PLF-EGS-DST, Order Dated November 9, 2006 (Doc. No. 33). Here, of course, it is not clear yet what the Attorney General's position will be and, for the reasons set forth below, there is good reason to believe that the Attorney General will not adequately represent the interest of voters of New Hampshire like movant.

II. MOVANT MEETS THE REQUIREMENTS FOR INTERVENTION AS OF RIGHT UNDER RULE 24(a)(2)

Rule 24(a)(2) of the Federal Rules of Civil Procedure provides that, on timely motion, the court "must permit anyone to intervene" who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties represent that interest." The rule is thus said to have four requirements: (1) a timely motion, (2) a protectable interest, (3) the possibility of impairment, and (4) inadequacy of representation. Movant here meets each of those requirements.

A. Timeliness

As discussed above in Part I of the Argument, this motion is timely.

B. A Protectable Interest And Impairment

Movant is currently receiving the protection of the special remedial provisions of the Voting Rights Act because all of New Hampshire's statewide laws affecting voting must be precleared before they go into effect to insure that they do not have the purpose or effect of denying or abridging the right to vote on the basis of race or color. Should plaintiff successfully

4

procure the declaratory judgment it seeks, an entitlement to bailout, movant will no longer receive the benefits of those remedial provisions. By itself, that suffices to demonstrate a protectable interest that may be impaired by this lawsuit. *Chiles v. Thornburg*, 865 F.2d 1197, 1214 (11th Cir. 1989) ("the interests of those who are governed by those schemes are sufficient to support intervention") (*quoting* 7C Charles A. Wright, *et al.*, *Federal Practice And Procedure*, § 1908, at 285 (2d ed. 1986)). *See also Cook v. Boorstin*, 763 F.2d 1462, 1466 (D.C. Cir. 1985) (consideration of protectable interest "is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.").

    C.    <u>Adequacy of Representation</u>

The required demonstration that the current parties do not adequately represent the interests of an intervenor is minimal. *E.g.*, *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003). That this burden can be met here, and that the existing parties do not adequately represent the interests of those like movant, is demonstrated by the complaint itself and the accompanying proposed motion to dismiss. Paragraph 31 of the complaint alleges that recent preclearance submissions were made after the Attorney General, "in the course of considering the State's bailout request," "determined that these matters were not reflected in their previous submissions to the Attorney General *over the previous ten years*." Complaint ¶ 31 (emphasis added). What this means, of course, is that the State and the Covered Towns were repeatedly *not* in compliance with the preclearance provisions of Section 5 of the Voting Rights Act over the past ten years, one of the undisputed prerequisites to the bailout declaratory

judgment.  Complaint ¶ 27.  Indeed, the allegation strongly suggests that some of the violations may have been taking place over a long period of time.

The Complaint itself acknowledges that plaintiff's implementation of various changes over a long time without obtaining preclearance were all violations of Section 5.  Specifically, it alleges that these voting changes without preclearance were "inadvertent and not the product of any discriminatory purpose or an intent to evade the Act."  Complaint ¶ 31.  But, of course, not only is the allegation of inadvertence made *ipse dixit*, and prior to any discovery in the case, but it is also legally irrelevant.  The bailout preconditions preclude bailout if there are violations of Section 5; there is no exception for violations not made with discriminatory intent.  It would be most odd if there were such an exception since Section 5 itself requires covered jurisdictions to prove far more than the mere absence of a discriminatory intent in order to attain preclearance of even a single voting change.  *Cf. Allen v. State Bd. Of Elections*, 393 U.S. 544, 558-59 (1969) ("[A] declaratory judgment action brought by a private litigant does not require the Court to reach this difficult substantive issue [of whether the change had a discriminatory purpose or effect].  The only issue is whether a particular state enactment is subject to the provisions of the Voting Rights Act, and therefore must be submitted for approval before enforcement.").

Thus, bailout here is legally foreclosed.  But the Complaint conspicuously does not allege that the Attorney General rejected the bailout request out of hand because of this.  Rather, it alleges that the Attorney General notified New Hampshire of these deficiencies and apparently permitted New Hampshire to file obviously belated requests for preclearance.  Complaint ¶ 31.

Further, when it comes to interpreting the bailout provisions, the Attorney General's

6

interests will necessarily diverge from those the Act's remedial provisions were designed to protect. The Attorney General, as the chief law enforcement officer of the nation, necessarily takes into account political and comity considerations when dealing with the states and their law enforcement officers. Imposing burdens on states and localities, even if required by a proper reading of the law, might be an inefficient use of the Attorney General's resources and/or otherwise contrary to that broader interest. *Cf. Allen*, 393 U.S. at 555 (holding that private parties in the relevant jurisdiction have standing to obtain an injunction against the implementation of voting changes that have not been precleared); *id.* at 556 ("The achievement of the Act's laudable goal could be severely hampered . . . if each citizen were required to depend solely on litigation instituted at the discretion of the Attorney General. . . . It is consistent with the broad purposes of the Act to allow the individual citizen standing to insure that his city or county government complies with the § 5 approval process.").

      The Attorney General no doubt would like to have the authority to determine whether a Section 5 violation is sufficiently weighty to warrant a denial of bailout, to make the argument to this Court that its conclusion in that regard is either presumptively correct or persuasive, and/or to make the argument that this Court has that discretion. Movant wishes to argue that both this Court and the Attorney General lack that discretion under the bailout provision, and certainly in this case because the violations were both repeated and apparently long-standing before any effort at correction was made. It seems quite unlikely that the Attorney General will make movant's argument to this Court if he has not already made it to New Hampshire (as it appears he has not).

This Court may take notice of two additional matters.  First, the Supreme Court has granted a petition for writ of certiorari to this Court in *Shelby County v. Holder*, a case that challenges the constitutionality of the 2006 reauthorization of Section 5.  *Shelby County v. Holder*, 2012 WL 3018430 (U.S. Nov. 9, 2012).  Part of the defense of the constitutionality of that statute is that the provisions permitting bail-in and bailout ensure that the statute remains focused on the jurisdictions with the worst records, and that the bailout provision can be readily used by covered jurisdictions with clean records.  *Shelby County v. Holder*, 679 F.3d 848, 881-82 (D.C. Cir. 2012), *cert. granted*, 2012 WL 3018430 (U.S. Nov. 9, 2012).  Indeed, one of plaintiff's attorneys has cited this case and other bailout cases as an important reason why the Supreme Court should uphold the constitutionality of Section 5.  Gerry Hebert, *The Shelby County, Alabama Case and Bailouts* (Nov. 15, 2012), available at http://www.clcblog.org.  The Attorney General thus has an incentive to interpret the bailout conditions very liberally, and his effort to defend the constitutionality of Section 5 in *Shelby County* seems likely to influence his determination of whether the bailout conditions have been met here.

Second, earlier this year, the Attorney General agreed to a consent decree permitting bailout in which the covered jurisdiction admittedly had enforced changes in voting laws without preclearance.  Consent Judgment and Decree in *Merced County v. Holder*, D.D.C. No. 12-cv-00354-TRH-DST-ABJ filed August 31, 2012 (Doc. No. 11) ¶ 29 ("Some recent submissions were made after the Attorney General reviewed the records of the County and the political subjurisdictions in the course of considering the County's bailout request and advised that it appeared that several potential voting changes had not previously been submitted to the Attorney General over the preceding ten years.").  This only gives further support to the belief that the

8

Attorney General, at least while *Shelby County* is before the Supreme Court, is not going to argue that full adherence to the bailout conditions must be met before this Court may issue the requested declaratory judgment.

III.    IN THE ALTERNATIVE, MOVANT SHOULD BE PERMITTED TO INTERVENE PURSUANT TO RULE 24(B).

Rule 24(b)(1)(B) permits this Court to grant intervention where the potential intervenor "has a claim or defense that shares with the main action a common question of law or fact." Here, movant wants to defend against plaintiff's lawsuit by pointing out its failure to adhere to Section 5 in the past and asserting that that failure precludes the declaratory judgment that plaintiff seeks. The common question of law in both the Complaint and movant's defense is whether plaintiff can still receive the declaratory judgment that it seeks despite that admitted failure. *See Bossier Parish School Bd. v. Reno*, 157 F.R.D. 133 (D.D.C. 1994 (three-judge court) (holding that group of voters from district could intervene in action seeking preclearance of redistricting plan under Rule 24(b)(2)). Moreover, while Rule 24(b)(3) requires this Court to consider whether "the intervention will unduly delay or prejudice the adjudication of the original parties' action," movant's prompt effort here precludes any finding of delay or prejudice.[1]

---

[1] Movant's proposed motion to dismiss accompanies this motion as an exhibit. While a motion to dismiss is technically not a "pleading," courts have repeatedly interpreted the "pleading" requirement of Rule 24(c) liberally so as to include a proposed motion to dismiss that makes clear the proposed intervenor's position. *New Century Bank v. Open Solutions, Inc.*, 2011 WL 1666926, *3 (E.D. Pa. May 2, 2011) (citing authorities); *Danner Constr. Co. v. Hillsborough County*, 2009 WL 2525486, *2 (M.D. Fla. Aug. 17, 2009) (ruling that a motion to dismiss suffices under Rule 24(c), and rejecting an overly strict interpretation of that rule).

Conclusion

For the foregoing reasons, the motion to intervene should be granted.

                Respectfully submitted,

                */s/ Michael E. Rosman*
                Michael E. Rosman (DC Bar No. 454002)
                Michelle Scott (DC Bar No. 489097)
                Center for Individual Rights
                1233 20th St. NW Suite 300
                Washington, DC 20036
                (202) 833-8400

                Attorneys for Movant