IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE STATE OF NEW HAMPSHIRE,<br><br>    Plaintiff,<br><br>    v.<br><br>ERIC HOLDER, Attorney General of the United States of America; THOMAS E. PEREZ, Assistant Attorney General, Civil Rights Division, United States Department of Justice, Washington, DC,<br><br>    Defendants. | Civil Action No. 1:12-CV-01854<br>EGS-TBG-RMC<br>Three-Judge Court |

## ATTORNEY GENERAL'S OPPOSITION TO MOTION TO INTERVENE

Defendants Attorney General of the United States and Assistant Attorney General for the Civil Rights Division (hereafter "the Attorney General") respectfully submit the following response to the amended motion to intervene as a defendant by Peter Heilemann (Doc. 6), filed on December 5, 2012. Movant seeks to intervene of right under Rule 24(a) and, in the alternative, to intervene permissively under Rule 24(b). The Attorney General opposes intervention by Movant on either ground.

### BACKGROUND

Congress enacted the Voting Rights Act in 1965 to "rid the country of racial discrimination in voting." *South Carolina v. Katzenbach*, 383 U.S. 301, 315 (1966). In addition to permanent and nationally-applicable provisions, the Act also contains several special provisions that are limited in time and limited in geographic coverage, based on determinations

1

by the Attorney General and the Director of the Census.  The best known of these temporary provisions is Section 5, 42 U.S.C. § 1973c, which requires covered jurisdictions to receive a "preclearance" determination from either the Attorney General or this Court that changes in voting practices and procedures are not racially discriminatory in purpose or effect before those changes can be legally enforced.  Originally enacted as part of the 1965 Act, Congress reauthorized and extended Section 5 in 1970, 1975, 1982, and, most recently, on July 27, 2006.

Section 4(b) of the Act contains a congressionally prescribed coverage formula to determine which jurisdictions are subject to certain special provisions of the Act, including the preclearance requirements of Section 5.  42 U.S.C. § 1973b(b).  That coverage formula required the Attorney General to determine whether a jurisdiction applied a "test or device" as of the coverage date, and for the Director of the Census to determine whether a jurisdiction had fewer than 50 percent of persons registered to vote or voting in the relevant presidential election.  *Id*. These formulas were applied at the state level and at the level of government in each state that conducts voter registration and elections (such as the county, parish, or township level, depending on the state's system of government).  42 U.S.C. §§ 1973b(b), 1973*l*(b).  At present, nine states are covered as a whole by the Section 5 preclearance requirement, while individual jurisdictions in seven other states (including New Hampshire) are also covered.  28 C.F.R. Part 51, Appendix.

After the 1970 amendments to the Voting Rights Act, the coverage formula was applied to jurisdictions based on information available as of the 1968 general election.  The Attorney General determined that the State of New Hampshire maintained a "test or device" as of November 1, 1968, 35 Fed. Reg. 12,354 (Aug. 1, 1970).  The Director of the Census determined

that in each of ten jurisdictions in New Hampshire, considered separately, less than 50 percent of the persons of voting age residing therein voted in the presidential election on November 1968, 39 Fed. Reg. 16,912 (May 10, 1974).  By virtue of this coverage determination, the ten covered towns and townships in New Hampshire, and the governmental units within their boundaries, must receive preclearance under Section 5 of the Voting Rights Act for all changes affecting voting enacted or implemented after November 1, 1968.  The State of New Hampshire itself is not covered under Section 4(b) of the Act, and thus the State itself is not subject to the preclearance requirements of Section 5 of the Act.

Section 4(a) of the Act affords covered jurisdictions the opportunity to exempt themselves from being subject to Section 5 by bringing a statutory declaratory judgment action and demonstrating that they satisfy certain criteria.  42 U.S.C. § 1973b(a).  Declaratory judgment actions under Section 4(a) are commonly referred to as "bailout" actions, and are statutorily assigned to a court of three judges in the United States District Court for the District of Columbia.[1]  42 U.S.C. §§ 1973b(a)(1), (a)(5); 28 U.S.C. § 2884.  The Attorney General is the statutory defendant in bailout actions, and may "consent[] to an entry of judgment if based upon a showing of objective and compelling evidence by the plaintiff, and upon investigation, he is satisfied that the State or political subdivision has complied with the requirements" for bailout. 42 U.S.C. § 1973b(a)(9).

---

[1] This Court is also the exclusive venue in which declaratory judgment actions can be brought seeking judicial preclearance of voting changes under Section 5, 42 U.S.C. § 1973c, or seeking a declaration of the unconstitutionality of the provisions of the Act under Section 14(b), 42 U.S.C. § 1973*l*(b).

New Hampshire filed a complaint in this Court on November 15, 2012, presenting solely a statutory bailout claim under Section 4(a) of the Act.[2] New Hampshire brings this claim on behalf of the ten towns and townships in the State that have a published coverage determination under Section 4(b) of the Act, and that are thus subject to the preclearance requirements of Section 5 of the Act.[3] If this Court grants the State's bailout request, the ten covered towns and townships would be exempted from coverage under the preclearance provisions of Section 5, subject to a ten-year recapture period in the event that disqualifying voting discrimination occurs in the future. 42 U.S.C. § 1973b(a)(5).

## ARGUMENT

**I.     The motion to intervene of right should be denied.**

Intervention in Voting Rights Act cases before this Court is governed by the requirements of Rule 24 of the Federal Rules of Civil Procedure. *Georgia v. Ashcroft*, 539 U.S. 461, 476 (2003). Movant is not entitled to either intervention of right or permissive intervention, and this Court should therefore deny his motion to intervene.

---

[2] The U.S. Attorney for the District of Columbia was served with the complaint on November 26, 2012. Hence, the responsive pleading for the Attorney General is due January 25, 2013. The Attorney General presently expects to complete negotiations with New Hampshire on a proposed consent decree for presentation to the court well before that date.

[3] This conforms to the practice by other states that filed a bailout action on behalf of the subset of covered jurisdictions within their boundaries. See, e.g., *Idaho v. United States*, No. 82-1778 (D.D.C. July 31, 1984) (one jurisdiction); *Connecticut v. United States*, No. 83-3103 (D.D.C. June 21, 1984) (three jurisdictions); *Massachusetts v. United States*, No. 83-0945 (D.D.C. Sept. 29, 1983) (nine jurisdictions); *Maine v. United States*, No. 75-2125 (D.D.C. Sept. 17, 1976) (18 jurisdictions); *New Mexico v. United States*, No. 76-0067 (D.D.C. July 30, 1976) (three jurisdictions); *and Alaska v. United States*, No. 2122-71 (D.D.C. Mar. 10, 1972) (three jurisdictions).

### A. Movant is not an "aggrieved party" within the terms of the bailout provision, and therefore has no statutory right to intervene under Rule 24(a)(1).

Movant argues first that he is entitled to intervene pursuant to Rule 24(a)(1), which provides that intervention of right is proper, on timely motion, for anyone who "is given an unconditional right to intervene by a federal statute." Fed. R. Civ. P. 24(a)(1). Although the Voting Rights Act does create a statutory right to intervene in bailout actions under Section 4(a), that right only applies to "aggrieved parties." Movant does not qualify as an aggrieved party under Section 4(a), and is not entitled to intervene as of right under Rule 24(a)(1).

The current bailout provisions of Section 4(a) were significantly revised as part of the 1982 amendments to the Act, and went into effect on August 5, 1984. Pub. L. No. 97-205, § 2(b) (1982). In these amendments, Congress expanded the number of jurisdictions that could seek bailout, revised the substantive bailout standard, and created a statutory right for aggrieved parties to intervene in bailout cases. As amended in 1982, Section 4(a)(4) of the Act provides that a covered State or political subdivision bringing a bailout case "shall publicize the intended commencement and any proposed settlement of such action in the media," and further provides that "[a]ny aggrieved party may as of right intervene at any stage in such action." 42 U.S.C. § 1973b(a)(4); *see also id.* §§ 1973b(a)(5), (a)(9).

The Senate Report accompanying the 1982 amendments, in describing the new Section 4(a)(4), explained that:

> The State [or] political subdivision seeking bailout must give reasonable public notice of the commencement and any proposed settlement of the bailout suit to enable interested persons to intervene. An aggrieved party is defined broadly to include any person *who would have standing under the law*. Such persons may intervene at any stage, including the appeal.

5

S. Rep. No. 97-417, at 74 (1982) (emphasis added). The House Report on the 1982 amendments similarly describes the intervention provisions. H.R. Rep. No. 97-227, at 44-45 (1981).

Although we not aware of any court having interpreted the "aggrieved party" requirement in Section 4(a) of the Act, near-identical statutory language in Section 3 of the Act – which provides a private right of action to "aggrieved persons" for Voting Rights Act violations, 42 U.S.C. § 1973a(a) – has long been interpreted to require that the party satisfy the Article III constitutional standing requirements.[4] *See, e.g., Roberts v. Wamser*, 883 F.2d 617, 624 (8th Cir. 1989) ("[S]tanding to sue under th[e] [Voting Rights] Act is limited to the Attorney General and to 'aggrieved persons,' a category that we hold to be limited to persons whose voting rights have been denied or impaired."); *Perry-Bey v. City of Norfolk*, 678 F. Supp. 2d 348, 362 (E.D. Va. 2009) (an "aggrieved person" under the Voting Rights Act is a party that satisfies constitutional standing requirements) (citing cases); *see also* S. Rep. No. 94-295, at 40 (1975) (describing the language in Section 3 of the VRA to mean "[a]n 'aggrieved person' is any person injured by an act of discrimination."). Here, Movant cannot demonstrate constitutional standing, and is therefore not an aggrieved party under Section 4(a) entitled to intervention of right.

### 1. Standing requirements in the voting context.

The jurisdiction of federal courts is limited to actual cases or controversies between proper litigants. U.S. Const. art. III, § 2. As the Supreme Court has explained, "the irreducible constitutional minimum of standing contains three elements": (1) injury in fact; (2) a causal

---

[4] The National Voter Registration Act similarly grants a private right of action to "a person who is aggrieved by a violation" of that statute, and courts have likewise interpreted this provision to require a demonstration of constitutional standing. *See, e.g.*, *Assoc. of Cmty. Org.s for Reform Now v. Fowler*, 178 F.3d 350, 363-64 (5th Cir. 1999).

connection between the injury and the conduct complained of that is fairly traceable to the challenged action; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The party invoking the jurisdiction of the court – the Movant in this case – bears the burden of proving each of these elements of his standing. *See Id.* at 561.

In particular, the Supreme Court has explained that to demonstrate "injury in fact," a party must suffer "an invasion of a legally protected interest" which is "concrete and particularized" and "actual or imminent." *Id.* at 560 (internal citations omitted). The alleged injury must affect plaintiffs "in a personal and individual way." *Id.* at 560 n.1. The Court has also emphasized that when the "asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*, much more is needed" to demonstrate standing than in the typical case. *Id.* at 562 (emphasis in original). Likewise, when the complaining party "is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Id.* (citations omitted).

It is well-established in voting cases that a party living in one jurisdiction does not have standing to contest practices regarding voter registration or voting in a different jurisdiction – in which the party does not reside and is not registered to vote – because the party cannot be personally injured by those voting practices. In general, to demonstrate that one is personally injured for standing purposes in the voting context, courts have required a showing that the party resides and votes in the jurisdiction or district at issue in the case.

For example, in the context of racial gerrymandering claims regarding districting plans, the Supreme Court has repeatedly held that plaintiffs must live in the district that is the subject of the gerrymandering claim, or otherwise show that they have personally been denied equal treatment. *See, e.g.*, *United States v. Hays*, 515 U.S. 737, 745 (1995); *Sinkfield v. Kelley*, 531 U.S. 28, 30 (2000) (per curiam). And in the constitutional one-person one-vote context, where the question is the relative weight of the votes in malapportioned districts, courts have held that voters who live in districts that are overrepresented are not injured by malapportioned maps, and therefore lack standing to sue either on their own behalf or on behalf of voters who live in underrepresented districts. *See Wright v. Dougherty Cnty.*, 358 F.3d 1352, 1355-56 (11th Cir. 2004).

Similarly, citizens who reside within one jurisdiction do not have standing to bring a Voting Rights Act challenge to elections in a different jurisdiction in which they do not reside. Again, this is because, from an injury-in-fact standpoint, "there can be no infringement of a plaintiff's right to vote in an election in which he or she is *not eligible* to vote." *Lopez v. Merced Cnty.*, 473 F. Supp. 2d 1072, 1080 (E.D. Cal. 2007) (three-judge court) (emphasis in original) (holding that plaintiffs "who allege they are residents of the City of Los Banos, only have standing to challenge the municipal elections within Los Banos. They do not have standing to challenge changes to the voting districts of the other defendant cities . . . ."). Other courts have held that parties asserting claims under the Voting Rights Act must reside and be a registered voter in the jurisdiction and district that is the subject of the claim. *Hall v. Virginia*, 276 F. Supp. 2d 528, 531-32 (E.D.Va. 2003), *aff'd*, 385 F.3d 421 (4th Cir.), *cert. denied*, 544 U.S. 961 (2005) (dismissing claim under the Voting Rights Act because "plaintiffs who reside outside a district

lack standing to challenge that district on voting rights grounds"); *Perry-Bey*, 678 F. Supp. 2d at 362-64 (E.D. Va. 2009) (dismissing claim under the Voting Rights Act for lack of standing where plaintiff failed to allege that she was a registered voter in the jurisdiction, or that she resided in a ward where her vote would be diluted).

> 2. **Movant does not assert that he lives within a covered township in New Hampshire, and therefore lacks standing.**

Movant claims to be a "citizen of, and registered voter in, the State of New Hampshire." Heilemann Statement ¶ 1 (Doc. 6-2). He does not allege that he is a registered voter in any one of the ten covered towns and townships in New Hampshire that are seeking to bailout; rather, he alleges only that he is a registered voter within the State.

As noted, the State of New Hampshire is not a covered jurisdiction under Section 4 of the Act and, as a result, is not itself subject to the special provisions of the Act, including Section 5. The only covered jurisdictions are the ten separate New Hampshire towns and townships: the coverage formula was applied to each such jurisdiction individually, and each such jurisdiction was named separately in the coverage determination. *See* 39 Fed. Reg. 16,912 (May 10, 1974); 35 Fed. Reg. 12,354 (Aug. 1, 1970). Section 5 applies only to the ten covered jurisdictions in New Hampshire; it does not preclude immediate implantation of any voting changes in parts of New Hampshire outside of the covered jurisdictions.

Hence, Section 5 does not confer any legally-protectable benefit to Movant, who does not allege that he resides or is registered to vote in one of the ten covered jurisdictions in New Hampshire. *See, e.g.*, *Hays*, 515 U.S. at 745; *Lopez*, 473 F. Supp. 2d at 1080. Movant benefits no more from the Section 5 coverage in other parts of New Hampshire than he does from Section 5 coverage in Louisiana. Nor would successful bailout by the covered New Hampshire

9

jurisdictions deprive Movant of any statutory right he previously enjoyed, any more than would bailout by Louisiana. The statutory claim on which Movant's request to intervene rests therefore cannot properly "be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth v. Seldin*, 422 U.S. 490, 500 (1975).[5]

Although Movant does not allege that he resides or is registered to vote in a covered town or township, he nonetheless claims that he "receive[s] the benefits of Section 5" since "all statewide changes in election law" must be precleared by this Court or the Attorney General. Heilemann Statement ¶ 2 (Doc 6-2). While it is correct that statewide voting changes in partially-covered states must be reviewed under Section 5, that preclearance review is limited to whether there is a discriminatory purpose or effect with regard *only* to the covered jurisdictions within that state, and does not include any review of the voting change with regard to non-covered parts of the state. *See Lopez v. Monterey Cnty.*, 525 U.S. 266, 269 (1999) ("[T]he [Voting Rights] Act's preclearance requirements apply to measures mandated by a noncovered State to the extent that these measures will effect a voting change in a covered county."); *see also Florida v. United States*, 820 F. Supp. 2d 85, 92 (D.D.C. 2011) (three-judge court) ("Florida is not precluded from implementing the Four Changes throughout the state with the exception of the five Covered Counties, and it has already taken steps to do so.")

When a statewide voting change from New Hampshire is submitted for administrative review under Section 5, for example, the Attorney General considers only whether there is a

---

[5] Even if Movant had alleged that he were a registered voter in one of the ten covered towns and townships in New Hampshire, he would have standing to contest bailout only by that specific jurisdiction, and not by any of the other nine covered jurisdictions.

discriminatory purpose or effect regarding the covered jurisdictions – the Attorney General does not, and cannot, consider whether there is a discriminatory purpose or effect in other parts of the State.  In New Hampshire, then, the special provisions of the Voting Rights Act, including Section 5, have no application to any part of the State aside from the ten covered towns and townships.

Movant therefore alleges at most a generalized grievance that he shares in common with every other resident and registered voter in New Hampshire who lives outside of the ten covered towns.  Since these covered towns are quite small, and most of New Hampshire is not covered by Section 5, Movant's grievance is one he shares with the overwhelming majority of the population of the state.  As the Supreme Court has held, "a plaintiff raising only a generally available grievance about government – claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large – does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573-74.

Because Movant lacks Article III standing, he is not an aggrieved party within the meaning of Section 4(a) of the Voting Rights Act, and is not entitled to intervene under Rule 24(a)(1).

**B.      Movant is not entitled to intervention of right under Rule 24(a)(2).**

In addition to contending that he has a statutory right to intervene under Rule 24(a)(1), Movant argues that he is entitled to intervene of right under Rule 24(a)(2).  Rule 24(a)(2) provides that intervention of right is proper for a party who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the

action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Movant's failure to demonstrate Article III standing defeats his request for intervention under Rule 24(a)(2) as well.

The D.C. Circuit has held that intervention of right outside of the context of a statutory right to intervene depends on four factors: "(1) the timeliness of the motion; (2) whether the applicant 'claims an interest relating to the property or transaction which is the subject of the action'; (3) whether 'the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest'; and (4) whether 'the applicant's interest is adequately represented by existing parties.'" *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003) (citations omitted).

The D.C. Circuit has further held that, in addition to meeting these requirements, "a movant for leave to intervene under Rule 24(a)(2) must have Article III standing to participate in proceedings before the district court . . . because a Rule 24 intervenor seeks to participate on an equal footing with the original parties to the suit, he must satisfy the standing requirements imposed on those parties." *City of Cleveland v. Nuclear Regulatory Comm'n*, 17 F.3d 1515, 1517 (D.C. Cir. 1994); *see also S. Christian Leadership Conference v. Kelley*, 747 F.2d 777, 779 (D.C. Cir. 1984) ("Rule 24(a)(2) requires the intervenor to demonstrate 'an interest relating to the property or transaction which is the subject of the action.' The rule impliedly refers not to *any* interest the applicant can put forward, but only to a legally protectable one … Such a gloss upon the rule is in any case required by Article III of the Constitution." (emphasis in original) (citations omitted)).

12

For the same reasons described in Part I.A above, Movant does not have standing and cannot demonstrate that he meets the requirements for intervention of right. Nor can movant demonstrate that any interest he does possess is not adequately represented by the parties to the litigation. Under the Voting Rights Act, the Attorney General is charged with protecting the public interest in eradicating racial discrimination in voting. To that end, the Attorney General administers the Section 5 preclearance process, brings affirmative suits to enforce the Act, serves as the statutory defendant in judicial preclearance and bailout cases brought in this Court under the Act, and defends constitutional challenges to the Act. *See* 42 U.S.C. §§ 1973(b)(a), 1973c, 1973j(d), 1973*l*(b). Movants request for intervention of right should therefore be denied.

## II.     This Court should exercise its discretion to deny Movant's request for permissive intervention.

Movant seeks in the alternative to be granted permissive intervention under Rule 24(b). Because permissive intervention would delay or prejudice the rights of the parties to this litigation, the Court should deny Movant's request.

### A.     Permissive intervention should not be granted because Movant does not present any independent ground for subject matter jurisdiction.

Rule 24(b) provides that on timely motion, the court may grant permissive intervention to a party who "(A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). The D.C. Circuit has further explained that "to litigate a claim on the merits," a putative permissive intervenor "must ordinarily present . . . an independent ground for subject matter jurisdiction . . . ." *EEOC v. Nat'l Children's Ctr.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). This requirement "stems not from any explicit language in Rule 24(b), but rather from the basic

principle that a court may not adjudicate claims over which it lacks subject matter jurisdiction." *Id.*

Movant's request for intervention under Rule 24(b)(1)(B)[6] should be denied because Movant has no independent basis to invoke this Court's subject matter jurisdiction. As described in Part I above, Movant has not alleged that he resides or votes in a covered jurisdiction, would suffer no injury from allowing a covered jurisdiction to bailout, and has no independent basis for contesting bailout by any of the covered jurisdictions seeking bailout in this Court. The district courts in this Circuit routinely deny permissive intervention to movants who fail to demonstrate an independent ground for subject matter jurisdiction. *See, e.g.*, *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 519 F. Supp. 2d 89, 93-94 (D.D.C. 2007) (denying permissive intervention where the movant "fails to specify the grounds for the independent subject-matter jurisdiction it claims to enjoy"); *Envtl. Def. v. Leavitt*, 329 F. Supp. 2d 55, 69 (D.D.C. 2004).

### B. Permissive intervention should also be denied because Movant would "unduly delay or prejudice" the adjudication of this bailout claim.

The standard for permissive intervention also provides that "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Even if Movant satisfied the Rule 24(b)(1) standard, which he does not, permissive intervention should be denied on grounds of undue delay and prejudice.

---

[6] Movant does not claim that a federal statute confers a conditional right to intervene under Rule 24(b)(1)(A). Even if he did so claim, the analysis set forth in Part I above, demonstrating that Movant lacks standing sufficient to qualify under the "aggrieved party" intervention provision of Section 4(a) of the Voting Rights Act, would preclude such intervention.

First, Movant has indicated that one purpose in seeking intervention is to hinder New Hampshire's bailout request so as to contend, in separate litigation, that Section 5 of the Voting Rights Act is unconstitutional because it is insufficiently targeted at jurisdictions with a history of discrimination. *See* Mem. Supp. Mot. to Intervene at 8 (Doc 6) ("Part of the defense of the constitutionality of [Section 5 in the Supreme Court] is that the provisions permitting bail-in and bailout ensure that the statute remains focused on the jurisdictions with the worst records, and that the bailout provision can be readily used by covered jurisdictions with clean records.").[7]

Permissive intervention should not be granted where Movant's purpose appears to be to advance a constitutional challenge to the Voting Rights Act in separate litigation in a different court. *See* Fed. R. Civ. P. 24(b)(3); *Dist. of Columbia v. Potomac Elec. Power Co.*, 826 F. Supp. 2d 227, 236-37 (D.D.C. 2011) (denying permissive intervention on grounds of undue delay and prejudice, even where the other Rule 24(b) requirements are met). Movant is of course perfectly entitled to raise as an amicus in the Supreme Court any arguments he chooses regarding the constitutionality of the Voting Rights Act, but he should not be permitted to advance that end by invoking the judicial process in this case.

Second, the Attorney General notes that the position advanced by Movant is inconsistent with both the statutory text of the bailout provision and the history of bailout cases before this

---

[7] *See also* Exhibit A, attached hereto, "*CIR enters voting rights fray in New Hampshire*", http://www.cir-usa.org/updates/index.html#nhamp (last visited Dec. 19, 2012) ("CIR believes that permitting New Hampshire to bail out of Section 5 not only violates the express conditions for bail out, but creates a false impression that the bailout provisions minimize the unconstittuional [sic] burden imposed on states by Section 5. CIR is pressing for Section 5 to be struck down in its entirety in *Shelby County v. Holder*, a case now before the Supreme Court. CIR believes the constitutional problems with Section 5 cannot be minimized by arbitrarily setting aside the requirements for bailout the eve of consideration of the constitutionality of Section 5 by the Supreme Court.")

15

Court.[8]  Movant would impose an interpretation of the statute that denies any discretion to this Court or to the Attorney General in assessing bailout eligibility, but neither the statute nor the history of bailout cases before this Court support such an approach.  The statute itself allows that even where there are violations of law, bailout is still possible where those violations "were trivial, were promptly corrected and were not repeated."  42 U.S.C. § 1973b(a)(3).  Likewise, the statute explicitly grants the Attorney General the authority and discretion to consent to bailout where after "investigation" and a showing of "objective and compelling evidence" by the jurisdiction, he "is satisfied" that the jurisdiction has met the bailout standard.  42 U.S.C. § 1973b(a)(9).  It is the Attorney General's statutory responsibility to investigate and respond to bailout cases filed in this Court, and he asserts that he more than adequately represents the interests of all citizens in fulfilling that task.

In addition, the purported basis for bailout ineligibility that Movant identifies – implementation of certain voting changes prior to Section 5 review – has arisen in previous bailout litigation and has been treated consistently by the Attorney General and this Court over time.  Since the 1982 bailout standard went into effect in 1984, there have been forty bailout cases filed in this Court by covered political subdivisions.[9]  Of these forty cases, thirty-eight have to date been resolved by consent decrees that were agreed to between the Attorney General

---

[8] The Attorney General responds today only to the motion to intervene.  Pursuant to Local Civil Rule 7(j), the Attorney General reserves the right to respond fully on the merits to Movant's proposed motion to dismiss the complaint, should the court grant intervention.

[9] Information on these bailout cases is available online on the Department of Justice website, at http://www.justice.gov/crt/about/vot/misc/sec_4.php#bailout.

and the covered jurisdiction and signed by this Court; the other two bailout cases (including this one) remain pending.

In a significant number of these bailouts that have been granted under the 1982 standard, the Attorney General's investigation identified voting changes that had been implemented prior to Section 5 review.  *See, e.g.*, *Shenandoah Cnty. v. Reno*, No. 99-cv-992 (D.D.C. Oct. 15, 1999); *Roanoke Cnty. v. Reno*, No. 00-cv-1949 (D.D.C. Jan. 24, 2001); *Warren Cnty. v. Ashcroft*, No. 02-cv-1736 (D.D.C. Nov. 26, 2002); *Pulaski Cnty. v. Gonzales*, No. 05-cv-1265 (D.D.C. Sept. 27, 2005); *Augusta Cnty. v. Gonzales*, No. 05-cv-1885 (D.D.C. Nov. 30, 2005);  *City of Kings Mountain v. Holder*, No. 10-cv-1153 (D.D.C. Oct. 22, 2010); *Jefferson Cnty. Drainage Dist. No. Seven v. Holder*, No. 11-cv-461 (D.D.C. June 6, 2011); *Alta Irrigation Dist. v. Holder*, No. 11-cv-758 (D.D.C. July 15, 2011); *Culpeper Cnty. v. Holder*, No. 11-cv-1477 (D.D.C. Oct. 3, 2011); *King George Cnty. v. Holder*, No. 11-cv-2164 (D.D.C. April 5, 2012); *Prince William Cnty. v. Holder,* No. 12-00014 (D.D.C. April 10, 2012); *Merced Cnty. v. Holder*, No. 12-cv-354 (D.D.C. Aug. 31, 2012).  In each of these bailout cases, the Attorney General determined that the failure to make such submissions prior to implementation was not the product of any discriminatory reason.  Likewise, in these bailout cases, the Attorney General found no evidence that implementation of such changes, which were subsequently precleared under Section 5, had a discriminatory purpose or effect on voting that would contravene Congress' intent in providing the bailout option to jurisdictions such as these.  Bailout was therefore consistent with both the statutory standard, 42 U.S.C. § 1973b(a)(3), and with the Attorney General's authority to consent to bailout where he is satisfied after investigation that the standard has been met.  42 U.S.C. § 1973b(a)(9).  This approach is consistent as well with the Supreme Court's explicit instruction

that the bailout standard must be broadly construed.  *See Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 207 (2009).[10]

## CONCLUSION

Movant is not entitled to intervention of right under Rule 24(a).  Movant lacks standing, since he does not claim to be a resident or a registered voter in one of New Hampshire's ten covered jurisdictions.  He is thus not an aggrieved party entitled to intervene in a bailout case under Section 4(a) of the Act.  Likewise he does not possess a legally protectable interest in the statutory bailout claim that is the subject on this case.

Movant is also not entitled to permissive intervention under Rule 24(b).   Movant does not claim that a federal statute confers a conditional right to intervene.  Likewise, movant cannot

---

[10] Movant notes that this Court has permitted intervention in bailout litigation in the past. Mem. Supp. Intervention 3-4 (Doc. 6).  The Attorney General is aware of only one lawsuit involving a bailout claim, since the amendments to Section 4(a) took effect in 1984, in which intervention has been sought – *Nw. Austin Mun. Util. Dist. No. One  v. Mukasey*, No. 06-cv-1384 (D.D.C.).  Intervention was denied in two other bailout cases that predate the 1982 amendments to the statute.  *See NAACP v. New York*, 413 U.S. 345, 365-69 (1973) (affirming denial of intervention); *Apache Cnty. v. United States*, 256 F. Supp. 903 (D.D.C. 1966) (three-judge court) (denying intervention).

In *Northwest Austin*, the Attorney General consented to intervention of right by residents and registered voters within the covered jurisdiction (a Texas utility district) seeking bailout, and consented to permissive intervention for other persons residing in the larger covered jurisdictions that encompassed the utility district, such as persons residing in the fully covered State of Texas (because the utility district was also asserting a facial challenge to the constitutionality of Section 5 across all covered jurisdictions).  The court in *Northwest Austin* granted the motions to intervene without specifying whether intervention was permissive or of right.  *See* Orders of Nov. 9, 2006, Doc. 33; Nov. 15, 2006, Doc. 40; Nov. 17, 2006, Doc. 47; March 26, 2007, Doc. 84; No. 06-cv-1384.  Indeed, this Court has regularly granted intervention, typically permissive, to residents and registered voters in covered jurisdictions who seek to participate in judicial preclearance claims and constitutional challenges in Voting Rights Act cases before this Court. *See, e.g.*, *Cnty. Council of Sumter Cnty. v. United States*, 555 F. Supp. 694, 696-97 (D.D.C. 1983).  None of this suggests that intervention should be expanded dramatically to embrace persons who live outside of covered jurisdictions, in the manner that Movant here suggests.

established an independent ground for subject matter jurisdiction in his motion to dismiss the state's bailout complaint since this is not a claim that he is entitled to bring, as a non-resident of the state's covered jurisdictions.

The motion to intervene should be denied.

Respectfully submitted,

RONALD C. MACHEN, JR.  THOMAS E. PEREZ
United States Attorney  Assistant Attorney General
District of Columbia  Civil Rights Division

*/s/ SaraBeth Donovan*
_____
T. CHRISTIAN HERREN, JR.
SARABETH DONOVAN
BRUCE I. GEAR
CHRISTY A. MCCORMICK
JENIGH J. GARRETT
Attorneys, Voting Section
Civil Rights Division
United States Department of Justice
950 Pennsylvania Ave., N.W.
Room 7254 - NWB
Washington, D.C. 20530
Phone: (202) 305-2552
Fax:    (202) 307-3961
sarabeth.donovan@usdoj.gov
bruce.gear@usdoj.gov
christy.mccormick@usdoj.gov
jenigh.garrett@usdoj.gov

Counsel for Defendants

Dated:  December 19, 2012

CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system and will therefore be sent electronically to counsel of record in this matter.

J. Gerald Hebert, Esq.
191 Somervelle Street, #405
Alexandria, VA  22304
(703) 628-4673
hebert@voterlaw.com


Michael E. Rosman, Esq.
Center for Individual Rights
1233 20th Street, N.W., Suite 300
Washington, D.C.  20036
(202) 833-8400
rosman@cir-usa.org


December 19, 2012

                                    */s/  SaraBeth Donovan*
                                    _____
                                    SaraBeth Donovan
                                    Attorney, Voting Section
                                    Civil Rights Division
                                    United States Department of Justice
                                    950 Pennsylvania Ave. N.W., NWB-7254
                                    Washington, D.C. 20530
                                    sarabeth.donovan@usdoj.gov