UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| STATE OF NEW HAMPSHIRE, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 12-1584 |
| v. | ) ) | (EGS-TBG-RMC) |
| ERIC HOLDER, in his official capacity as Attorney General of the United States, *et al.* | ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION OF THREE-JUDGE COURT**

This case is before the Court on Proposed Intervenor Peter Heilemann's Motion to Intervene. Movant seeks to intervene as of right under Federal Rule of Civil Procedure 24(a) or, in the alternative, to intervene permissively under Rule 24(b). For the reasons explained below, the motion will be **DENIED**.

**I. BACKGROUND**

Congress enacted the Voting Rights Act in 1965 to "rid the country of racial discrimination in voting." *South Carolina v. Katzenbach*, 383 U.S. 301, 315 (1966). Section 5 of the Act requires certain "covered jurisdictions" to "preclear" every proposed change in their voting procedures with either the Attorney General or a three-judge panel of this Court. 42 U.S.C. § 1973c. Certain jurisdictions were deemed "covered" by Section 5 because they applied a "test or device" to determine

eligibility for voting and the jurisdiction had fewer than 50 percent of persons registered to vote or voting in the relevant presidential election.  42 U.S.C. § 1973b(b).  At present, nine states are covered as a whole by the Section 5 preclearance requirement, while individual jurisdictions in seven other states, including New Hampshire, are also covered.  Attorney General's Opp. to Mot. to Intervene, ECF No. 9, at 2 (citing 28 C.F.R. Part 51, Appendix); Dep't of Justice, Section 5 Covered Jurisdictions, www.justice.gov/crt/about/vot/sec_5/covered.php (last visited January 28, 2013).

Section 4(a) of the Act affords covered jurisdictions the opportunity to remove themselves from Section 5 preclearance requirements by bringing a statutory declaratory judgment action and demonstrating that they satisfy certain criteria.  42 U.S.C. § 1973b(a).  These actions are commonly referred to as "bailout" actions and are statutorily assigned to a three-judge court in the United States District Court for the District of Columbia.  42 U.S.C. § 1973b(a)(1), (a)(5); 28 U.S.C. § 2284.  The Attorney General is the statutory defendant in bailout actions, and may "consent[] to the entry of judgment if based upon a showing of objective and compelling evidence by the plaintiff, and upon investigation, he is satisfied that the State or political subdivision has complied with the requirements" for bailout.  42 U.S.C. § 1973b(a)(9).

On November 15, 2012, the State of New Hampshire brought a declaratory judgment action on behalf of ten towns within the State that are "covered jurisdictions" under Section 5 of the Voting Rights Act. Compl. ¶¶ 1-2. The State argued that its covered political subdivisions were eligible for a "bailout" from the preclearance requirements of Section 5. Compl. ¶¶ 30-41. The State represented that it and its covered jurisdictions had made numerous submissions over the years seeking preclearance under Section 5 and none of the submissions had ever received an objection from the Attorney General. Compl. ¶ 30. The State noted, however, that it had inadvertently failed to obtain preclearance for certain minor changes in voting procedures in the last ten years but that it had now submitted those changes to the Attorney General for preclearance. Compl. ¶ 31.

On December 5, 2012, Proposed Intervenor Peter Heilemann filed a Motion to Intervene. Movant contends that he is a "citizen of, and registered voter in, the State of New Hampshire." Heilemann Statement ¶ 1. He does not allege, however, that he is eligible to vote in any of the ten covered jurisdictions, nor does he allege that he is a member of any racial or other minority group protected by the Voting Rights Act. He also has not alleged that any voting practice or change in procedure has harmed him in any way. Rather, he contends

3

that as a voter in the State of New Hampshire, he "receives the benefit of the special remedial provisions of the Voting Rights Act because every statewide law effecting any change in voting in any of the Covered Towns must be 'precleared' under Section 5." Mot. to Intervene at 2. Movant alleges that he is entitled to intervene because he "wants to continue to receive the benefit of such review." *Id*. The motion is now ripe for the Court's decision.

## II. STANDARD OF REVIEW

The Supreme Court has held that "[p]rivate parties may intervene in Section 5 actions," and that such intervention is controlled by Rule 24. *Georgia v. Ashcroft*, 539 U.S. 461, 477 (2003). In this act, Movant seeks to intervene as of right pursuant to Rule 24(a) or, in the alternative, permissively pursuant to Rule 24(b).

Rule 24(a)(1) provides that on timely motion, the court must permit anyone to intervene who "is given an unconditional right to intervene by a federal statute." Rule 24(a)(2) provides that the court must permit anyone to intervene who

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

4

This Circuit has held that intervention as of right under Rule 24(a)(2) depends on "(1) the timeliness of the motion; (2) whether the applicant 'claims an interest relating to the property or transaction which is the subject of the action'; (3) whether 'the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest'; and (4) whether 'the applicant's interest is adequately represented by the existing parties.'" *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003) (citations omitted). A movant seeking to intervene as of right under Rule 24(a)(2) must additionally demonstrate Article III standing. *In re Endangered Species Act Sec. 4 Deadline Litig.*, --- F.3d ----, No. 11-5274, 2013 WL 45871, *6 (D.C. Cir. Jan. 4, 2013) (citing *United States v. Philip Morris USA, Inc.*, 566 F.3d 1095, 1146 (D.C. Cir. 2009)). Because a Rule 24(a)(2) intervenor seeks to participate on equal footing with the original parties to the suit, he must satisfy the standing requirements imposed on the parties. *Id.* at *3 (citing *City of Cleveland v. NRC*, 17 F.3d 1515, 1517 (D.C. Cir. 1994)).

Rule 24(b) sets forth the standard for permissive intervention, and states in relevant part that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common

question or law or fact." The grant of a Rule 24(b) motion is left to the district court's sound discretion. *E.E.O.C. v. Nat'l Children's Center, Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

### III. DISCUSSION

#### A. Rule 24(a)(1): Intervention by Statute

Movant argues that he may intervene as of right pursuant to Rule 24(a)(1) and Section 4(a)(4) of the Voting Rights Act, 42 U.S.C. § 1973b(a)(4), which states that "[a]ny aggrieved party may as of right intervene at any stage in such action."[1] The issue, therefore, is whether Movant is an "aggrieved party" under the statute.

The current bailout provisions of the Voting Rights Act were revised in the 1982 amendments to the Act, and went into effect on August 5, 1984. Voting Rights Act Amendments of 1982, Pub. L. No. 97-205, § 2(b). In the amendments, Congress created

---

[1] In a parenthetical, Movant also argues that he is entitled to intervene under Section 4(a)(9), which states that any aggrieved party may intervene as of right at any stage in an action where the Attorney General has consented to a declaratory judgment permitting bailout. 42 U.S.C. § 1973b(a)(9). Neither party focuses on this subsection as the basis for Movant's intervention, nor has any party argued that the definition of "aggrieved party" under this subsection differs from Section 4(a)(4).

6

a statutory right for aggrieved parties to intervene in those cases. As amended, Section 4(a)(4) provides that a covered State or political subdivision bringing a bailout case "shall publicize the intended commencement and any proposed settlement of such action in the media," and further provides that "[a]ny aggrieved party may as of right intervene at any such stage in such action." 42 U.S.C. § 1973b(a)(4). The Senate Report accompanying the 1982 amendments states that:

> The State [or] political subdivision seeking bailout must give reasonable public notice of the commencement and any proposed settlement of the bailout suit to enable interested persons to intervene. An aggrieved party is defined broadly to include *any person who would have standing under the law*. Such persons may intervene at any stage, including the appeal.

S. Rep. No. 97-417, at 74 (1982) (emphasis added).

Movant argues that he is entitled to intervene as an "aggrieved party" because he is a registered voter in the State of New Hampshire. Mot. to Intervene at 3 (citing *Trafficante v. Met. Life Ins. Co.*, 409 U.S. 205, 209 (1972) *disagreement recognized by Thompson v. N. Am. Stainless, LP*, 131 S.Ct. 863, 869 (2011); *Fed. Elec. Comm'n v. Akins*, 524 U.S. 11, 19 (1998)). In making this argument, Movant appears to allege that the "aggrieved party" standard under Section 4(a)(4) goes beyond the limits of Article III standing.

The cases Movant cites in support of his argument that he is an "aggrieved party" are easily distinguishable. Movant

cites *Trafficante* for the proposition that "the definition of 'person aggrieved' contained in the Fair Housing Act is broad." In that case, however, the Supreme Court stated that the standard of "aggrieved persons" under the Civil Rights Act of 1968, 42 U.S.C. § 3610(a), could extend only to the outer limits of constitutional standing and not beyond it, and is thus not helpful to Movant.  409 U.S. at 209.  Moreover, the limits of "aggrieved persons" under the Civil Rights Act of 1968 have since been clarified by the Supreme Court to be narrower than the outer boundaries of Article III standing.  *Thompson,* 131 S. Ct. at 869 (2011).

Movant also cites dicta from *Federal Election Commission v. Akins* for the proposition that "aggrieved" goes beyond the traditional limits of standing.  In that case, however, the Supreme Court made clear that the plaintiff had alleged a specific, concrete injury, rather than an abstract injury, in seeking redress for the failure to receive certain materials under the Federal Election Campaign Act.  Moreover, the Supreme Court expressly found that the claims satisfied the requirements of Article III standing.

Far more persuasive are the cases cited by the Attorney General relating to Section 3 of the Voting Rights Act.  In all of those cases, the word "aggrieved" has been interpreted to require Article III standing.  *See, e.g.*, *Roberts v. Wamser*, 883

F.2d 617, 624 (8th Cir. 1989) ("[S]tanding . . . under th[e] [Voting Rights] Act is limited to the Attorney General and to 'aggrieved persons,' a category that we hold to be limited to persons whose voting rights have been denied or impaired."); *Perry-Bey v. City of Norfolk*, 678 F. Supp. 2d 348, 362 (E.D. Va. 2009) (an "aggrieved person" under the Voting Rights Act is a party that satisfies constitutional standing requirements) (citing cases).

Notably, Movant does not allege that he resides in any of the covered political subdivisions seeking a bailout, nor does he allege that his voting rights have been infringed. Rather, Movant argues that he is an aggrieved party because he

> would be deprived of the protection of the remedial provisions of the Voting Rights Act were plaintiff successful in obtaining the relief it seeks in this lawsuit. That suffices to constitute an imminent Article III injury, and, *a fortiori*, constitutes sufficient harm to qualify as an aggrieved party for purposes of intervention under the statute.

Mot. to Intervene at 3. In this respect, Movant skips over the Article III standing inquiry. For the reasons explained above, the Court finds that standing is required for Movant to proceed as an "aggrieved party" under Section 4(a)(4) of the Voting Rights Act.

### 1. Standing

Article III of the Constitution restricts the jurisdiction of the federal courts to adjudicating actual "cases" and

9

"controversies." U.S. Const. art. III, § 2; *see also Allen v. Wright,* 468 U.S. 737, 750 (1984). This requirement has given rise to "several doctrines ... 'founded in concern about the proper—and properly limited—role of the courts in a democratic society.'" *Allen,* 468 U.S. at 750 (quoting *Warth v. Seldin,* 422 U.S. 490, 498 (1975)); *see also Valley Forge Christian Coll. v. Ams. United for Separation of Church and State,* 454 U.S. 464, 471 (1982). One aspect of this "case-or-controversy" requirement is that plaintiffs must have standing to sue, an inquiry that focuses on whether the litigant is entitled to have the court decide the merits of the dispute. *Allen,* 468 U.S. at 750-51 (quoting *Warth,* 422 U.S. at 498).

To establish the "irreducible constitutional minimum" of Article III standing, a plaintiff must show that: (1) he has suffered an "injury in fact" which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) there is a causal connection between the alleged injury and the conduct complained of that is fairly traceable to the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992) (citations omitted).

### a. Procedural Standing

Movant argues that he has standing because he is seeking to prevent a procedural injury.[2] Specifically, he argues that prior changes were made to voting laws in covered jurisdictions in New Hampshire without obtaining preclearance and that this failure to submit a change "deprives those affected of a procedural protection regardless of whether the process would have resulted in an objection or a denial of declaratory judgment under Section 5." Movant's Reply, ECF No. 11, at 4. Movant further contends that if "New Hampshire is permitted to bail out, [he] will be deprived of that procedural protection." *Id*. This argument fails.

The Supreme Court has afforded special treatment to procedural injuries under Article III, "noting that '[t]here is much truth to the assertion that "procedural rights" are special: The person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy.'" *Sec. 4 Deadline Litig.*, --- F.3d at ----, No. 11-5274, 2013 WL 45871, at *4 (D.C. Cir. Jan. 4, 2013) (citing

---

[2] Movant initially alleged that he had Article III standing, without specific reference to procedural standing. In his reply, Movant essentially concedes that his voting rights will not be impaired by a bailout and he clarifies that he is seeking to assert procedural standing, rather than constitutional standing. Movant's Reply at 4.

11

*Lujan*, 504 U.S. at 572 n.7).  The doctrine "loosens the strictures of the standing inquiry," relaxing the immediacy and redressability requirements.  *Id.* (citing *Lujan*, 504 U.S. at 572 n.7; *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009)).  As this Circuit has recognized, however, "where plaintiffs allege injury resulting from violation of a procedural right afforded to them by statute and designed to protect their threatened concrete interest, the courts relax-while not wholly eliminating-the issues of imminence and redressability, but not the issues of injury in fact or causation."  *Center for Law and Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1157 (D.C. Cir. 2005).  Thus, the D.C. Circuit has held that a party has procedural standing only if, *inter alia,* (1) the government violated its procedural rights designed to protect a threatened, concrete interest, and (2) the violation resulted in injury to that concrete, particularized interest.  *Id.*  However, the procedural standing doctrine "does not—and cannot—eliminate any of the 'irreducible' elements of standing[.]"  *Fla. Audubon Soc'y v. Bentsen,* 94 F.3d 658, 664 (D.C. Cir. 1996).[3]

---

[3] The cases cited by Movant are not relevant as to whether Sections 4 and 5 of the Voting Rights Act were designed to protect Movant's interests or whether the alleged violations of those subsections caused Movant injury. *See Nat'l Parks Conserv. Ass'n v. Manson*, 414 F.3d 1, 6 (D.C. Cir. 2005) (holding that a plaintiff challenging an agency action need not demonstrate that 1) the agency action would have been different but for the procedural violation or 2) that court-ordered

12

As to the first element, Movant has failed to demonstrate that any alleged procedural right to Section 5 preclearance is designed to protect Movant's particularized, concrete interests. As the D.C. Circuit has recognized, not all procedural rights violations are sufficient for standing: a plaintiff must show that "the procedures in question are *designed* to protect some threatened concrete interest of *his* that is the ultimate basis of his standing." *Center for Law and Educ.*, 396 F.3d at 1157 (citing *Lujan*, 504 U.S. at 573 n.8); *accord Sec. 4 Deadline Litig.*, --- F.3d ----, No. 11-5274, 2013 WL 45871, *12 (D.C. Cir. Jan. 4, 2013). "[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers*, 555 U.S. at 496.

In *Lujan*, the Supreme Court offered two examples of procedures designed to protect a party's concrete interest: (1) the requirement for a hearing prior to a denial of a license application is designed to protect the applicant, and (2) the requirement that a federal agency prepare an environmental impact statement before conducting a major federal action such

---

compliance with the procedure would alter the final result); *Lemon v. Geren*, 514 F.3d 1312, (D.C. Cir. 2008) (plaintiffs who lived in the vicinity of Army base had standing to challenge Army's alleged failure to comply with NEPA impact statement procedures even though they could not prove that the preparation of the impact statement would have prevented the relocation of the Army base).

as constructing a dam is designed to protect neighbors of the proposed dam. *See* 504 U.S. at 572. In a subsequent case, this Circuit held that a plaintiff who lived in the vicinity of a proposed airport runway had procedural standing to challenge the FAA's alleged failure to authorize the runway without performing an environmental assessment because "[t]he procedural requirements of NEPA were designed to protect persons . . . who might be injured by hasty federal actions taken without regarding for possible environmental consequences." *City of Dania Beach v. FAA*, 485 F.3d 1181, 1186 (D.C. Cir. 2007) (citation omitted). The Circuit found that the plaintiff had "adequately demonstrated that the FAA's failure to follow the NEPA procedures pose[d] a 'distinct risk' to [plaintiff's] 'particularized interests' [and] given the location of his home, he is uniquely susceptible to injury resulting from increased use of the secondary runways." *Id*.

Here, Movant generally claims that he receives a benefit from the preclearance process, which determines that "statewide laws affecting voting . . . do not have the purpose or effect of denying or abridging the right to vote on the basis of race or color" in the covered communities. Mot. to Intervene at 4. Unlike the plaintiff in *City of Dania Beach*, however, Movant's alleged interests are no different than the benefit conferred upon *any* New Hampshire voter. Movant has thus failed to

14

establish that Section 5 preclearance was designed to protect any threatened concrete interest of *his*.

Moreover, Movant has also failed to establish that the bailout from the Section 5 preclearance procedures would result in any injury to his interests. "[T]he requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute." *Summers*, 555 U.S. at 497. Movant's arguments are exceedingly vague as to this point. For example, he contends that he is entitled to intervene because he "wants to continue to receive the benefit" of Section 5 preclearance in New Hampshire. Mot. to Intervene at 2. He does not allege, for example, that the bailout would have any negative impact on his ability to vote, nor does he allege that he is a member of a protected group who might be negatively impacted. Indeed, he does not even allege that he is eligible to vote in one of the covered jurisdictions.[4] Essentially, the only injury that Movant

---

[4] Movant argues that this Court recently permitted intervention in a Voting Rights case by a person who did not live in any of the relevant covered counties in Florida. Reply Br. at 7 (citing *Florida v. United States*, No. 11 Civ. 1428, ECF No. 42 (D.D.C. Oct. 19, 2011)). In particular, Movant cites the grant of permissive intervention under Rule 24(b)(1) to Ion Sancho, who was allegedly the Supervisor of Elections of a non-covered county in Florida. In that case, however, permissive intervention was not opposed by any of the parties. *See id*. ECF No. 26 at 3. Even if permissive intervention had been contested, Movant fails to explain how his interests as a voter are analogous to those of a Supervisor of Elections. Similarly, Movant argues that nonparties were granted intervention in *Northwest Austin Municipal Utility District v. Gonzales*. No. 06

has alleged is that the Attorney General may not apply the law in the manner that Movant believes it should be applied. That is simply insufficient to allege an injury for standing purposes. *See Lance v. Coffman*, 549 U.S. 437, 441-42 (2007) ("The only injury that plaintiffs allege is that the law—specifically the Elections Clause—has not been followed. This injury is precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance in the past.").

For the reasons discussed above, the Court finds that Movant lacks standing in this action and is therefore not an "aggrieved party" under Section 4(a)(4) of the Voting Rights Act.

## B. Rule 24(a)(2): Intervention as of Right

Intervention as of right under Rule 24(a)(2) depends on "(1) the timeliness of the motion; (2) whether the applicant 'claims an interest relating to the property or transaction which is the subject of the action'; (3) whether 'the applicant is so situated that the disposition of the action may as a

---

Civ. 01384, ECF No. 33 (D.D.C. Nov. 9, 2006). In that case, the Court granted the motions to intervene without indicating whether the parties were intervening permissively or as of right, and without indicating whether the motions had been by consent. *See id*. The Order also did not indicate—and Movant does not allege—that any of the intervenors lived outside the covered district. Movant cites this case only for the proposition that the Court has permitted intervention in bailout cases.

practical matter impair or impede the applicant's ability to protect that interest'; and (4) whether 'the applicant's interest is adequately represented by the existing parties.'" *Fund for Animals, Inc.*, 322 F.3d at 731 (citations omitted). A movant seeking to intervene as of right under Rule 24(a)(2) must also establish Article III standing. *Sec. 4 Deadline Litig.*, --- F.3d ----, No. 11-5274, 2013 WL 45871, *6 (citing *United States v. Philip Morris USA, Inc.*, 566 F.3d 1095, 1146 (D.C. Cir. 2009)).

As discussed above, the Court finds that Movant does not have standing in this case. For that reason, the Court finds that Movant cannot intervene in this action as of right under Rule 24(a)(2) and the Court does not reach the four-factor test set forth in *Fund for Animals*.

### C. Rule 24(b)(1): Permissive Intervention

Movant argues in the alternative that he should be allowed to intervene permissively under Rule 24(b)(1). Mot. to Intervene at 9. In order to permissively intervene under Rule 24(b)(2), the proposed intervenor must ordinarily present: (1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action. *Nat'l Children's Center, Inc.*, 146 F.3d at 1046. The grant of a Rule 24(b) motion is left to the district court's sound discretion. *Id*.

17

"In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

The Court finds that permissive intervention under Rule 24(b) will unduly delay and prejudice the adjudication of the original parties' rights. *See* Fed. R. Civ. P. 24(b)(3). Here, the parties have proposed a consent decree and requested that the Court enter judgment as to that decree. As such, all of the disputes between the parties have been resolved and the only thing standing between them and the resolution of the case is the issue of Movant's intervention. Because there are no remaining issues between the parties, Movant's intervention will only delay the action. Likewise, the Court finds that Movant's intervention would prejudice the adjudication of the parties' rights. Movant does not allege any concrete injury to his interests that would result from the bailout of the ten covered jurisdictions in New Hampshire. Rather, the only potential injury that at issue here is to the parties, in the form of the delay that would result if the consent decree were not entered. As such, the Court finds, in its discretion, that intervention should not be permitted under Rule 24(b) because it would unduly delay and prejudice the adjudication of the original parties' rights. Accordingly, the Court will deny Movant's request to intervene permissively.

**IV. CONCLUSION**

For the reasons explained above, Movant's motion to intervene is **DENIED**. An appropriate Order accompanies this Memorandum Opinion.

**Signed:    March 1, 2013**

    **/s/ Thomas B. Griffith**
    **United States Circuit Judge**

    **/s/ Emmet G. Sullivan**
    **United States District Judge**

    **/s/ Rosemary M. Collyer**
    **United States District Judge**