IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE STATE OF NEW HAMPSHIRE, <br><br> Plaintiff, <br><br> v. <br><br> ERIC HOLDER, <br> Attorney General of the <br> United States of America; <br> THOMAS E. PEREZ, <br> Assistant Attorney General, <br> Civil Rights Division, United States <br> Department of Justice, Washington, DC, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    No. 1:12-CV-01854 <br> )    EGS -TBG-RMC <br> )    Three-Judge Court <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

CONSENT JUDGMENT AND DECREE

1.     Plaintiff State of New Hampshire ("New Hampshire") initiated this action against Defendants Eric Holder, Attorney General of the United States, and Thomas E. Perez, Assistant Attorney General, Civil Rights Division (collectively, "the Attorney General") on November 15, 2012 on behalf of the ten covered towns and unincorporated townships in the State that are subject to the special provisions of the Voting Rights Act.

2.     The towns and townships of Antrim, Benton, Boscawen, Millsfield, Newington, Pinkham's Grant, Rindge, Stewartstown, Stratford, and Unity, New Hampshire are political subdivisions organized under the constitution and laws of the State of New Hampshire.  These ten towns and townships are subject to the special provisions of the Voting Rights Act, including

the preclearance requirements of Section 5 of the Act, 42 U.S.C. §1973c.   The State of New Hampshire itself is not a covered jurisdiction under the Act.

3.      The ten towns and townships became covered after the 1970 amendments to the Voting Rights Act, based on the coverage formula set forth in the second sentence of Section 4(b) of the Act, 42 U.S.C. §1973b(b), and based on determinations made by the Attorney General and the Director of the Census, that were published in the Federal Register.   The Attorney General determined that the State of New Hampshire maintained a "test or device" as of November 1, 1968, 35 Fed. Reg. 12354 (Aug. 1, 1970).   The Director of the Census determined that in each of these ten towns or townships in New Hampshire, considered separately, less than 50 percent of the persons of voting age residing therein voted in the presidential election on November 1968, 39 Fed. Reg. 16912 (May 10, 1974).   By virtue of this coverage determination, the ten covered towns and townships and the governmental units within their boundaries must receive preclearance under Section 5 of the Voting Rights Act for all changes affecting voting enacted or implemented after November 1, 1968.   The State has sought preclearance for state enactments that affect voters in the covered towns and townships.

4.      In this action, New Hampshire seeks a declaratory judgment pursuant to Section 4(a)(1) of the Voting Rights Act, 42 U.S.C. §1973b(a)(1), exempting the ten covered towns and townships from coverage under Section 4(b) of the Act, 42 U.S.C. §1973b(b).   Exemption under Section 4(b) would in turn exempt the covered towns and townships and governmental units included within their boundaries from the preclearance provisions of Section 5, 42 U.S.C. §1973c.

5.      This three-judge district court is authorized by 28 U.S.C. §2284 and 42 U.S.C. §1973b(a)(5) and has jurisdiction over this matter.

6.      Section 4(a) of the Voting Rights Act provides that a political subdivision subject to the special provisions of the Act may be exempted or "bailed out" from those provisions through a declaratory judgment action in this Court if it can demonstrate fulfillment of the specific statutory conditions in Section 4(a) both "during the ten years preceding the filing" of the bailout action and "during the pendency" of such action.  42 U.S.C. §1973b(a)(1).  In relevant part, the statutory conditions for bailout in Section 4(a) are:

> (A)  no such test or device has been used within such State or political subdivision for the purpose or with the effect of denying or abridging the right to vote on account of race or color or (in the case of a State or subdivision seeking a declaratory judgment under the second sentence of this subsection) in contravention of the guarantees of subsection (f)(2) of this section;
>
> (B)  no final judgment of any court of the United States, other than the denial of declaratory judgment under this section, has determined that denials or abridgements of the right to vote on account of race or color have occurred anywhere in the territory of such State or political subdivision or (in the case of a State or subdivision seeking a declaratory judgment under the second sentence of this subsection) that denials or abridgements of the right to vote in contravention of the guarantees of subsection (f)(2) of this section have occurred anywhere in the territory of such State or subdivision and no consent decree, settlement, or agreement has been entered into resulting in any abandonment of a voting practice challenged on such grounds; and no declaratory judgment under this section shall be entered during the pendency of an action commenced before the filing of an action under this section and alleging such denials or abridgements of the right to vote;
>
> (C)  no Federal examiners or observers under subchapters I-A to I-C of this chapter have been assigned to such State or political subdivision;

3

(D)  such State or political subdivision and all governmental units within its territory have complied with section 1973c of this title, including compliance with the requirement that no change covered by section 1973c of this title has been enforced without preclearance under section 1973c of this title, and have repealed all changes covered by section 1973c of this title to which the Attorney General has successfully objected or as to which the United States District Court for the District of Columbia has denied a declaratory judgment;

(E)  the Attorney General has not interposed any objection (that has not been overturned by a final judgment of a court) and no declaratory judgment has been denied under section 1973c of this title, with respect to any submission by or on behalf of the plaintiff or any governmental unit within its territory under section 1973c of this title, and no such submissions or declaratory judgment actions are pending; and

(F)  such State or political subdivision and all governmental units within its territory - (i) have eliminated voting procedures and methods of election which inhibit or dilute equal access to the electoral process; (ii) have engaged in constructive efforts to eliminate intimidation and harassment of persons exercising rights protected under subchapters I-A to I-C of this chapter; and (iii) have engaged in other constructive efforts, such as expanded opportunity for convenient registration and voting for every person of voting age and the appointment of minority persons as election officials throughout the jurisdiction and at all stages of the election and registration process.

*See* 42 U.S.C. §§1973b(a)(1)(A)-(F).

7.      Section 4(a) provides the following additional requirements to obtain bailout:

To assist the court in determining whether to issue a declaratory judgment under this subsection, the plaintiff shall present evidence of minority participation, including evidence of the levels of minority group registration and voting, changes in such levels over time, and disparities between minority-group and non-minority-group participation.

No declaratory judgment shall issue under this subsection with respect to such State or political subdivision if such plaintiff and governmental units within its territory have, during the period

> beginning ten years before the date the judgment is issued, engaged in violations of any provision of the Constitution or laws of the United States or any State or political subdivision with respect to discrimination in voting on account of race or color or (in the case of a State or subdivision seeking a declaratory judgment under the second sentence of this subsection) in contravention of the guarantees of subsection (f)(2) of this section unless the plaintiff establishes that any such violations were trivial, were promptly corrected, and were not repeated.
>
> The State or political subdivision bringing such action shall publicize the intended commencement and any proposed settlement of such action in the media serving such State or political subdivision and in appropriate United States post offices .
> . . .

*See* 42 U.S.C. §1973b(a)(2)-(a)(4).

8.      Section 4(a)(9) provides that the Attorney General can consent to entry of a declaratory judgment granting bailout "if based upon a showing of objective and compelling evidence by the plaintiff, and upon investigation, he is satisfied that the State or political subdivision has complied with the requirements of [Section 4(a)(1)] . . . ." 42 U.S.C. §1973b(a)(9).

9.      The Attorney General has advised the Court that he has conducted a comprehensive and independent investigation to determine the eligibility for bailout by the covered towns and townships.  In so doing, the Attorney General represents that Department of Justice attorneys have interviewed numerous members of local communities and reviewed a substantial quantity of documentary evidence, including: background information; demographic data; the submissions made by New Hampshire under Section 5 on behalf of the covered towns and townships and the governmental units within them; and the minutes of the governing bodies of the covered towns and townships and the governmental units within them that have conducted elections, for the period of the past ten years.

5

10.     The Attorney General and the State of New Hampshire agree that the covered towns and townships within the State have fulfilled the conditions required by Section 4(a) and are therefore entitled to the requested declaratory judgment exempting them from Section 5 coverage.  Accordingly, the State and the Attorney General have filed a Joint Motion for Entry of his Consent Judgment and Decree based on the following agreed factual findings.

<u>AGREED FACTUAL FINDINGS</u>

11.     The towns or townships of Antrim, Benton, Boscawen, Millsfield, Newington, Pinkham's Grant, Rindge, Stewartstown, Stratford, and Unity, New Hampshire are incorporated towns or unincorporated townships in the State of New Hampshire.  These ten towns and townships are political subdivisions of the State of New Hampshire, and thus are political subdivisions within the meaning of Section 4(a) of the Voting Rights Act.  *See* 42 U.S.C. §1973b(a)(1)(A); *see also Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193 (2009). There are eight other elected governmental units within the meaning of 42 U.S.C. §1973b(a)(1) that exist within New Hampshire's ten covered towns and townships.  These eight school districts that conduct elections are: the Jaffrey-Rindge Cooperative School District, the Contoocook Valley Regional School District, the Merrimack Valley School District, and the Benton, Stewartstown, Stratford, Newington, and Unity School Districts.

12.     The incorporated towns of Stewartstown and Stratford and the unincorporated townships of Millsfield and Pinkham's Grant are located in Coös County, the northernmost county in New Hampshire which extends to the Canadian border.

13.     The Town of Antrim is located in Hillsborough County, west of Manchester.

14.     The Town of Boscawen is located in Merrimack County, just north of Concord.

15.     The Town of Benton is located in Grafton County, in the upper northwestern

region of New Hampshire, on the western edge of the White Mountains.

16.     The Town of Newington is located in Rockingham County, in the southeastern corner of New Hampshire.

17.     The Town of Unity is located in Sullivan County, in the southwestern portion of New Hampshire, near the Vermont state line.

18.     The Town of Rindge is located in Cheshire County, just north of the Massachusetts state line.

19.     Set forth below are the demographics of the covered towns and townships, based on U.S. Census data. Racial categories for 2010 census data are aggregated pursuant to guidance issued by the Office of Management and Budget, OMB Bulletin 00-02 (Mar. 9, 2000), and the Department of Justice, 76 Fed. Reg. 7470, 7472 (Feb. 9, 2011); 66 Fed. Reg. 5411, 5414 (Jan. 18, 2001).

20.     According to the 2010 Census, the Town of Antrim had a total population of 2,637 persons, of whom 2,540 (96.3%) were non-Hispanic White, 12 (0.5%) were non-Hispanic Black, 31 (1.2%) were Hispanic, 33 (1.3%) were non-Hispanic American Indian, and 13 (0.5%) were non-Hispanic Asian.  According to the 2010 Census, Antrim had a total voting age population of 2,038 persons, of whom 1,978 (97.1%) were non-Hispanic White, 5 (0.2%) were non-Hispanic Black, 17 (0.8%) were Hispanic, 26 (1.3%) were non-Hispanic American Indian, and 8 (0.4%) were non-Hispanic Asian.

21.     According to the 2010 Census, the Town of Benton had a total population of 364 persons, of whom 350 (96.2%) were non-Hispanic White, 0 (0.0%) were non-Hispanic Black, 4 (1.1%) were Hispanic, 6 (1.6%) were non-Hispanic American Indian, and 3 (0.8%) were non-Hispanic Asian.  According to the 2010 Census, Benton had a total voting age population of 314

7

persons, of whom 301 (95.9%) were non-Hispanic White, 0 (0.0%) were non-Hispanic Black, 4 (1.3%) were Hispanic, 6 (1.9%) were non-Hispanic American Indian, and 2 (0.6%) were non-Hispanic Asian.

22.     According to the 2010 Census, the Town of Boscawen had a total population of 3,965 persons, of whom 3,835 (96.7%) were non-Hispanic White, 32 (0.8%) were non-Hispanic Black, 38 (1.0%) were Hispanic, 33 (0.8%) were non-Hispanic American Indian, and 19 (0.5%) were non-Hispanic Asian.  According to the 2010 Census, Boscawen had a total voting age population of 3,191 persons, of whom 3,100 (97.1%) were non-Hispanic White, 23 (0.7%) were non-Hispanic Black, 28 (0.9%) were Hispanic, 21 (0.7%) were non-Hispanic American Indian, and 13 (0.4%) were non-Hispanic Asian.

23.     According to the 2010 Census, the unincorporated Township of Millsfield had a total population of 23 persons, of whom 23 (100%) were non-Hispanic White, and a total voting age population of 17 persons, of whom 17 (100%) were non-Hispanic White.

24.     According to the 2010 Census, the Town of Newington had a total population of 753 persons, of whom 724 (96.1%) were non-Hispanic White, 1 (0.1%) was non-Hispanic Black, 8 (1.1%) were Hispanic, 4 (0.5%) were non-Hispanic American Indian, and 14 (1.9%) were non-Hispanic Asian.  According to the 2010 Census, Newington had a total voting age population of 623 persons, of whom 604 (97.0%) were non-Hispanic White, 1 (0.2%) was non-Hispanic Black, 5 (0.8%) were Hispanic, 2 (0.3%) were non-Hispanic American Indian, and 11 (1.8%) were non-Hispanic Asian.

25.     According to the 2010 Census, the unincorporated Township of Pinkham's Grant had a total population of 9 persons, all of whom were of voting age and of whom 6 (66.7%) were non-Hispanic White, and 3 (33.3%) were non-Hispanic Asian.

8

26.    According to the 2010 Census, the Town of Rindge had a total population of
6,014 persons, of whom 5,699 (94.8%) were non-Hispanic White, 94 (1.6%) were non-Hispanic
Black, 77 (1.3%) were Hispanic, 42 (0.7%) were non-Hispanic American Indian, and 74 (1.2%)
were non-Hispanic Asian.  According to the 2010 Census, Rindge had a total voting age
population of 4,812 persons, of whom 4,560 (94.8%) were non-Hispanic White, 72 (1.5%) were
non-Hispanic Black, 69 (1.4%) were Hispanic, 30 (0.6%) were non-Hispanic American Indian,
and 58 (1.2%) were non-Hispanic Asian.

27.    According to the 2010 Census, the Town of Stewartstown had a total population
of 1,004 persons, of whom 982 (97.8%) were non-Hispanic White, 3 (0.3%) were non-Hispanic
Black, 11 (1.1%) were Hispanic, 8 (0.8%) were non-Hispanic American Indian, and 0 (0.0%)
were non-Hispanic Asian. According to the 2010 Census, Stewartstown had a total voting age
population of 802 persons, of whom 792 (98.8%) were non-Hispanic White, 1 (0.1%) was non-
Hispanic Black, 3 (0.4%) were Hispanic, 6 (0.7%) were non-Hispanic American Indian, and 0
(0.0%) were non-Hispanic Asian.

28.    According to the 2010 Census, the Town of Stratford had a total population of
746 persons, of whom 710 (95.2%) were non-Hispanic White, 3 (0.4%) were non-Hispanic
Black, 10 (1.3%) were Hispanic, 15 (2.0%) were non-Hispanic American Indian, and 7 (0.9%)
were non-Hispanic Asian. According to the 2010 Census, Stratford had  a total voting age
population of 607 persons, of whom 578 (95.2%) were non-Hispanic White, 3 (0.5%) were non-
Hispanic Black, 6 (1.0%) were Hispanic, 14 (2.3%) were non-Hispanic American Indian, and 5
(0.8%) were non-Hispanic Asian.

29.    According to the 2010 Census, the Town of Unity had a total population of 1,671
persons, of whom 1,618 (96.8%) were non-Hispanic White, 5 (0.3%) were non-Hispanic Black,

14 (0.8%) were Hispanic, 24 (1.4%) were non-Hispanic American Indian, and 8 (0.5%) were non-Hispanic Asian. According to the 2010 Census, Unity had a total voting age population of 1,421 persons, of whom 1,386 (97.5%) were non-Hispanic White, 5 (0.4%) were non-Hispanic Black, 5 (0.4%) were Hispanic, 18 (1.3%) were non-Hispanic American Indian, and 5 (0.4%) were non-Hispanic Asian.

30.     Nine of the ten covered towns and townships (Antrim, Benton, Boscawen, Millsfield, Newington, Rindge, Stewartstown, Stratford, and Unity) are organized for the purpose of voting and have a Board of Selectmen – town meeting governmental structure.  The eight towns, as well as Millsfield Township, are governed by a three-member Board of Selectmen, as defined by state law.  N.H. Rev. Stat. Ann. §49-B:2 (IV) (2012).  The Selectmen are elected at-large, in a nonpartisan town meeting and serve three-year staggered terms.  The only minority member to serve on any of the Boards of Selectmen for the above nine towns or townships within the last ten years, was one American Indian member on the Board of Selectmen for the Town of Boscawen.

31.     Pinkham's Grant is an unincorporated township that is not organized for the purpose of voting and is not governed by a Board of Selectmen.  Pinkham's Grant is governed by the three-member Board of County Commissioners for Coös County.  Coös County Commissioners are elected from three single-member districts in even numbered years and serve four-year staggered terms.  Coös County is not a covered jurisdiction for purposes of Section 4 of the Voting Rights Act, 42 U.S.C. §1973b.

32.     The towns of Benton, Newington, Stewartstown, Stratford, and Unity each have school districts coterminous with each town, governed by a three-member school board.  School

board members are elected in each town, at-large, by plurality vote in a nonpartisan annual

school district or town meeting and serve three-year staggered terms.

33.      The Town of Rindge is part of the Jaffrey-Rindge Cooperative School District,

which is governed by a seven-member school board.  Three members are elected at-large from

the Town of Rindge, three members are elected at-large from the Town of Jaffrey, and one

member is elected district-wide.  Members of the Jaffrey-Rindge Cooperative School District are

elected by plurality vote in nonpartisan annual school district meetings and serve three-year

staggered terms.

34.      The Town of Antrim is part of the Contoocook Valley Regional School District,

which is governed by a thirteen-member school board.  Two members are elected at-large from

the Town of Antrim, four members are elected at-large from the Town of Peterborough, and one

member is elected at-large from each of the Towns of Bennington, Dublin, Francestown,

Greenfield, Hancock, Sharon, and Temple. Members of the Contoocook Valley School Board are

elected by plurality vote in nonpartisan annual school district meetings and serve three-year

staggered terms.

35.      The Town of Boscawen is part of the Merrimack Valley Regional School District.

The Merrimack Valley School District is governed by an eleven-member school board.  Two

members are elected at-large from the Town of Boscawen, two members are elected at-large

from each of the Towns of Loudon, Penacock, Salisbury and Webster, and one member is

elected district-wide.  Members of the Merrimack Valley Regional School District are elected by

plurality vote in nonpartisan annual school board meetings and serve three-year staggered terms.

During the last ten years, two minority board members have been elected from the Town of

Boscawen to serve on the Merrimack Valley School Board, one African American and one American Indian.

36.    The townships of Millsfield and Pinkham's Grant do not have school districts.

37.    Elections in Antrim, Benton, Boscawen, Millsfield, Newington, Rindge, Stewartstown, Stratford, and Unity – including voter registration, the preparation of ballots, list maintenance, and the selection of polling places – are administered by the Town Clerks, Supervisors of the Checklist, Town Moderators, Ballot Clerks, and the Select Board in each town or township.  Voters in Pinkham's Grant travel to the Town of Gorham to vote for county, state, and federal offices, and officials in the Town of Gorham administer those elections.

38.    Citizens who reside in New Hampshire, including in the ten covered towns and townships, can register to vote and thereafter vote at the polling site on Election Day in all elections.  Before the election, citizens also can submit voter registration applications in person with the office of the Town Clerk or with the town or township's Supervisors of the Checklist or submit an absentee voter registration form by mail under some circumstances.  The use of election day registration has long been a statewide feature of New Hampshire elections, and by virtue of this relatively rare elections feature, New Hampshire is one of the small number of states exempted from the voter registration requirements for federal elections otherwise required by the National Voter Registration Act of 1993.  42 U.S.C. §1973gg-2(b).

39.    As the State of New Hampshire and its ten covered towns and townships do not record the race of its registered voters, they cannot present direct evidence of minority voter registration or minority participation in voting.  The covered towns and townships have provided the data that are available, including voter registration and turnout data from 2002 through 2012, and those data show that a significant percentage of the voting age population in the covered

towns and townships is registered to vote and participated in general elections in presidential election years.

40.     For example, as of November 2010, at least 70% of the voting age population in all of the covered towns and townships was registered to vote.  As of November 2012, with two exceptions (the towns of Stewartstown and Stratford), at least 73% of the total voting age population in the covered towns and townships was registered to vote.  In the presidential election years of 2004 and 2008, with one exception (Pinkham's Grant), at least 62% of the registered voters of the covered towns and townships voted.  At least 72% of the registered voters in the covered towns and townships voted in the 2012 general presidential election, with the one exception of Pinkham's Grant.

41.     The Attorney General has found no evidence of violations of law implicating racial discrimination in voting in the covered jurisdictions in New Hampshire, nor court decisions that find racial discrimination in voting in the covered jurisdictions, nor pending court cases alleging such racial discrimination in voting.  42 U.S.C. §§1973b(a)(1)(B) and (a)(3).  The Attorney General and the State note that there is a pending state court case concerning the language used on the state's voter registration form regarding domicile.  The Attorney General notes that he has precleared the modifications to the state voter registration form pursuant to Section 5.  In September 2012, a state court preliminarily enjoined the State's modifications to the state voter registration application, holding that the changes likely violated the state constitution.  *See Rivers v. New Hampshire*, No. 219-2012-CV-00458 (Sept. 24, 2012).  In October, the state Supreme Court denied the State's Emergency Motion for Stay.  *See Petition of the State of New Hampshire*, No. 2012-0680 (N.H. Oct. 9, 2012).  The *Rivers* state court litigation remains ongoing, but does not deal with discrimination in voting on account of race or

color, and thus the Attorney General and the State agree that the state court action does not affect this bailout action.

42.     The State of New Hampshire has undertaken significant voluntary efforts on its own initiative to bring its ten covered towns and townships, and the included governmental units within them, into full compliance with Section 5 of the Voting Rights Act.  Since December 2002, the Attorney General has received 233 submissions on behalf of New Hampshire's ten covered towns and townships and governmental units within them.  These submissions included, but are not limited to, New Hampshire's post-2000 Census statewide redistricting plans, the State's post-2010 Census statewide redistricting plans, and the State's 2012 voter identification law.  All of these submissions have been precleared by the Attorney General under Section 5.  Some recent submissions were made after the Attorney General reviewed the records of the covered towns and townships in the course of considering New Hampshire's bailout request and advised that it appeared that several potential voting changes had not previously been submitted to the Attorney General over the preceding ten years.  This review also determined that the failure to make such submissions prior to implementation was not the product of any discriminatory reason.  Upon notice from the Attorney General, New Hampshire ensured that these matters were promptly submitted for review under Section 5, and the Attorney General interposed no objection to these changes under Section 5.  This Court has granted bailout to a number of other covered jurisdictions who have similarly implemented certain voting changes prior to Section 5 review.  *See, e.g.*, *Shenandoah Cnty. v. Reno*, No. 99-992 (D.D.C. Oct. 15, 1999); *Roanoke Cnty. v. Reno*, No. 00-1949 (D.D.C. Jan. 24, 2001); *Warren Cnty. v. Ashcroft*, No. 02-1736 (D.D.C. Nov. 26, 2002); *Pulaski Cnty. v. Gonzales*, No. 05-1265 (D.D.C. Sept. 27, 2005); *Augusta Cnty. v. Gonzales*, No. 05-1885 (D.D.C. Nov. 30, 2005); *City of Kings Mountain*

14

*v. Holder*, No. 10-cv-1153 (D.D.C. Oct. 22, 2010); *Jefferson Cnty. Drainage Dist. No. Seven v.*
*Holder*, No. 11-461 (D.D.C. June 6, 2011); *Alta Irrigation Dist. v. Holder*, No. 11-758 (D.D.C.
July 15, 2011); *Culpeper Cnty. v. Holder*, No. 11-1477 (D.D.C. Oct. 3, 2011); *King George*
*Cnty. v. Holder*, No.11-02164 (D.D.C. April 5, 2012); *Prince William Cnty. v. Holder,* No. 12-
00014 (D.D.C. April 10, 2012); *Merced Cnty. v. Holder*, No. 12-00354 (D.D.C. Aug. 31, 2012).
Information on bailout cases is available on the Department of Justice's website at
www.justice.gov/crt/about/vot/misc/sec_4.php

     43.     The Attorney General has also considered the fact New Hampshire is unusual in
that it very likely would have been one of the few jurisdictions covered under Section 4(b) of the
Act that would have been able to bail out under original bailout standard under Section 4(a) of
the Act (prior to the changes in the bailout standard in the 1982 amendments to the Act).  Under
this prior bailout standard, a covered jurisdiction had to demonstrate that it had not used a test or
device for racial discriminatory reasons at the time it became covered by Section 5.  Relatively
few covered jurisdictions could meet the prior bailout standard because most covered
jurisdictions were engaged in racial discrimination in voting at the time of coverage.  Had New
Hampshire sought to bail out its covered jurisdictions under the prior bailout standard, it likely
would have been successfully able to demonstrate that the covered towns had no known history
of intentional racial discrimination in voting at the time of coverage or since.  Indeed, the other
jurisdictions that were covered in the same 1974 coverage determination as the towns in New
Hampshire, long ago bailed out from coverage under the prior bailout standard.  *See* 39 Fed. Reg.
16912 (May 10, 1974); *Maine v. United States*, No. 75-2125 (D.D.C. Sept. 17, 1976) (18 towns);
*Massachusetts v. United States*, No. 83-0945 (D.D.C. Sept. 29, 1983) (9 towns); *Connecticut v.*
*United States*, No. 83-3103 (D.D.C. June 21, 1984) (3 towns).

44.     New Hampshire and its covered towns and townships publicized the intended commencement of this action prior to the filing of the Complaint in this action.  *See* 42 U.S.C. §1973b(a)(4).  In August 2012, notices of intent to seek bailout were posted on websites maintained by the Secretary of State and the towns of Boscawen, Gorham (on behalf of Pinkham's Grant Township), Newington, Rindge, and Stratford.  The State also publicized the commencement of this bailout in the Manchester Union newspaper on August 22, August 29, and September 5, 2012.  Additionally, the towns of Antrim, Benton, Boscawen, Gorham (on behalf of Pinkham's Grant Township), Newington, Rindge, Stewartstown, Strafford, and Unity, as well as the townships of Millsfield and Pinkham's Grant, posted notice of the commencement of this action at local post offices and town or township offices or facilities in August 2012.  Many of the towns and townships continued to post the notices through at least October 2012.  The State of New Hampshire and its covered towns and townships have also publicized notice of this proposed settlement, simultaneously with the filing of the Joint Motion for Entry of Consent Judgment and Decree.  42 U.S.C. §1973b(a)(4).

45.     The Attorney General has determined that it is appropriate to consent to a declaratory judgment allowing bailout by New Hampshire's ten covered towns and townships, pursuant to Section 4(a)(9) of the Voting Rights Act, 42 U.S.C. §1973b(a)(9).  The Attorney General's consent in this action is based upon his own independent factual investigation of the covered towns' and townships' fulfillment of all of the bailout criteria and consideration of all of the circumstances of this case, including the views of citizens of the covered towns and townships, and the absence of evidence of any racial discrimination in the electoral process.  This consent is premised on an understanding that Congress intended Section 4(a)(9) to permit bailout in those cases where the Attorney General is satisfied that both the statutory objectives of

16

encouraging Section 5 compliance and of preventing the use of discriminatory voting practices would not be compromised by such consent.

<u>AGREED FINDINGS ON STATUTORY BAILOUT CRITERIA</u>

46.     The towns and townships of Antrim, Benton, Boscawen, Millsfield, Newington, Pinkham's Grant, Rindge, Stewartstown, Stratford, and Unity, New Hampshire, and the governmental units within those towns and townships are covered jurisdictions subject to the special provisions of the Voting Rights Act, including Section 5 of the Act, 42 U.S.C. §1973c. Under Section 5, the covered towns and townships and the governmental units within those towns are required to obtain preclearance under Section 5 from either this Court or from the Attorney General for any change in voting standards, practices, and procedures adopted or implemented since the Act's coverage date for those towns.

47.     During the ten years preceding the filing of this action and during the pendency of this action, no test or device, as defined in Section 4(c) of the Act, 42 U.S.C. §1973b(c), has been used within the covered towns and townships in New Hampshire for the purpose or with the effect of denying or abridging the right to vote on account of race or color.  42 U.S.C. §1973b(a)(1)(A).

48.     During the ten years preceding the filing of this action, and during the pendency of this action, no final judgment of any court of the United States has determined that denials or abridgements of the right to vote on account of race or color have occurred anywhere within the territory of the covered towns and townships in New Hampshire.  Further, no consent decree, settlement, or agreement has been entered into resulting in any abandonment of a voting practice challenged on such grounds.  No action is presently pending alleging such denials or abridgements of the right to vote.  *See* 42 U.S.C. §1973b(a)(1)(B).

49.     During the ten years preceding the filing of this action, and during the pendency of this action, no Federal examiners or observers have been assigned to the covered towns and townships in New Hampshire. *See* 42 U.S.C. §1973b(a)(1)(C).

50.     During the ten years preceding the filing of this action, and during the pendency of this action, New Hampshire, on behalf of the ten covered towns and townships, has made 233 administrative submissions to the Attorney General for review under Section 5, and the Attorney General did not interpose an objection to any of these submissions under Section 5.  As set forth above, the covered towns and townships failed to submit, prior to implementation, certain voting changes to the Attorney General for review under Section 5.  There is no evidence that the covered towns and townships, or the governmental units within them, did not submit these matters prior to implementation for any improper reason.  Nor is there any evidence that implementation of such changes, which have now been precleared under Section 5, has had a discriminatory purpose or effect on voting that would contravene Congress' intent in providing the bailout option to jurisdictions such as these.   During the ten years preceding the filing of this action, and during the pendency of this action, there has been no need for the covered towns and townships or any of the governmental units within them to repeal any voting changes to which the Attorney General has objected, or to which this Court has denied a declaratory judgment, since no such objections or denials have occurred.  *See* 42 U.S.C. §1973b(a)(1)(D).

51.     During the ten years preceding the filing of this action, and during the pendency of this action, the Attorney General has not interposed any objection to voting changes submitted by or on behalf of the covered towns and townships in New Hampshire or the governmental units within them for administrative review under Section 5.  No such administrative submissions by or on behalf of the covered towns and townships or the governmental units within them are

presently pending before the Attorney General.  Neither the covered towns and townships in New Hampshire nor the governmental units within them have ever sought judicial preclearance from this Court under Section 5.  Thus, this Court has never denied the covered towns and townships in New Hampshire or the governmental units within them a declaratory judgment under Section 5, nor are any such declaratory judgment actions now pending.  *See* 42 U.S.C. §1973b(a)(1)(E).

52.     During the ten years preceding the filing of this action, and during the pendency of this action, neither the covered towns and townships in New Hampshire nor the governmental units within them have employed voting procedures or methods of election that inhibit or dilute equal access to the electoral process.  *See* 42 U.S.C. §1973b(a)(1)(F)(i).

53.      During the ten years preceding the filing of this action, and during the pendency of this action, there is no evidence that anyone participating in elections in the covered towns and townships in New Hampshire nor the governmental units within them has been subject to intimidation or harassment in the course of exercising his or her rights protected under the Voting Rights Act.  *See* 42 U.S.C. §1973b(a)(1)(F)(ii).

54.     Over the preceding ten years, New Hampshire and the covered towns and townships have made constructive efforts aimed at expanded opportunity for convenient registration and voting for all citizens of voting age, principally through continuing to offer the opportunity to register to vote, correct election records, and vote at the polling place on Election Day.  *See* 42 U.S.C. §1973b(a)(1)(F)(iii).

55.     The covered towns and townships in New Hampshire have presented available information regarding rates of voter registration and voter participation over time.  *See* 42 U.S.C. §1973b(a)(2).

56.     During the ten years preceding the filing of this action, and during the pendency of this action, neither the covered towns and townships in New Hampshire nor the governmental units within them have engaged in violations of any provision of the Constitution or laws of the United States or any State or political subdivision with respect to discrimination in voting on account of race or color.  *See* 42 U.S.C. §1973b(a)(3).

57.     The covered towns and townships and the State of New Hampshire publicized the intended commencement of this action prior to its being filed, by placing advertisements on websites, and posting notices at local post offices and town offices or facilities.  The State also publicized the commencement of this bailout in the <u>Manchester Union</u> newspaper on August 22, August 29, and September 5, 2012.  The covered towns and townships and the State of New Hampshire have publicized a notice of the proposed settlement of this action simultaneously with the filing of the Joint Motion for Entry of Consent Judgment and Decree.  *See* 42 U.S.C. §1973b(a)(4).

Accordingly, it is hereby ORDERED, ADJUDGED and DECREED:

1.     Plaintiff State of New Hampshire, on behalf of its ten covered towns and townships, is entitled to a declaratory judgment in accordance with Section 4(a)(1) of the Voting Rights Act, 42 U.S.C. §1973b(a)(1).

2.     The parties' Joint Motion for Entry of Consent Judgment and Decree is GRANTED, and the covered towns and townships of Antrim, Benton, Boscawen, Millsfield, Newington, Pinkham's Grant, Rindge, Stewartstown, Stratford, and Unity and any governmental units within them are exempted from coverage pursuant to Section 4(b) of the Voting Rights Act, 42 U.S.C. §1973b(b), provided that this Court shall retain jurisdiction over this matter for a period of ten years pursuant to Section 4(a)(5), 42 U.S.C. §1973b(a)(5).  This action shall be closed and

placed on this Court's inactive docket, subject to being reactivated upon application by either the

Attorney General or any aggrieved person in accordance with the procedures set forth in Section

4(a)(5), 42 U.S.C. §1973b(a)(5).

     3.       Each party shall bear its own fees, expenses and costs.


Entered this __1st__ day of _____March_____, __2013__.



  /s/ Thomas B. Griffith
_____
THOMAS B. GRIFFITH
UNITED STATES CIRCUIT JUDGE



  /s/ Emmet G. Sullivan
_____
EMMET G. SULLIVAN
UNITED STATES DISTRICT JUDGE



  /s/ Rosemary M. Collyer
_____
ROSEMARY M. COLLYER
UNITED STATES DISTRICT JUDGE

Approved as to form and content:

MICHAEL A. DELANEY
Attorney General
MATTHEW MAVROGEORGE
Assistant Attorney General
State of New Hampshire
33 Capitol Street
Concord, NH 03301
Phone: (603) 271-3658
Fax: (603) 271-2110

*/s/ J. Gerald Hebert*
J. GERALD HEBERT
D.C. Bar No. 447676
Attorney at Law
191 Somervelle Street, #405
Alexandria, VA 22304
Phone:  (703) 628-4673
hebert@voterlaw.com

STEPHEN B. PERSHING
D.C. Bar No. 482580
1416 E Street, N.E.
Washington, D.C. 20002
Phone:  (202) 543-4749
sbpershing@gmail.com

*Counsel for Plaintiff*
*State of New Hampshire*


Dated:  December 21, 2012

Approved as to form and content:

RONALD C. MACHEN JR.                    THOMAS E. PEREZ
United States Attorney                  Assistant Attorney General
District of Columbia                    Civil Rights Division

                                        /s/ SaraBeth Donovan
                                        T. CHRISTIAN HERREN, JR.
                                        SARABETH DONOVAN
                                        BRUCE I. GEAR
                                        CHRISTY A. MCCORMICK
                                        JENIGH J. GARRETT
                                        Attorneys
                                        Voting Section
                                        Civil Rights Division
                                        United States Department of Justice
                                        950 Pennsylvania Ave., N.W.
                                        Room 7254 - NWB
                                        Washington, D.C. 20530
                                        Phone: (202) 305-2552
                                        Fax:    (202) 307-3961
                                        sarabeth.donovan@usdoj.gov
                                        bruce.gear@usdoj.gov
                                        christy.mccormick@usdoj.gov
                                        jenigh.garrett@usdoj.gov

                                        Counsel for Defendants
                                        Attorney General of the United States, and
                                        Assistant Attorney General,
                                        Civil Rights Division

Dated: December 21, 2012

23